## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JOHN FITZGERALD HANSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10-CV-0113-CVE-TLW** |
| | ) | |
| **WILLIAM A. SHERROD,[1] Warden,** | ) | |
| **U.S. Penitentiary, USP Pollock, Louisiana;** | ) | |
| **E. SCOTT PRUITT, Attorney General of** | ) | |
| **Oklahoma,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action.  Petitioner, John Fitzgerald Hanson, is an Oklahoma death row prisoner, currently incarcerated at the United States Penitentiary in Pollock, Louisiana. In his petition (Dkt. # 13), Petitioner, who appears through counsel, challenges his conviction and sentence in Tulsa County District Court Case No. CF-1999-4583.  Respondents filed a response (Dkt. # 27) to the petition, and Petitioner filed a reply (Dkt. # 31) to the response.  The state court record has been produced.[2]  See Dkt. ## 32, 34. The Court considered all of these materials in reaching its decision. For the reasons discussed below, the Court concludes the petition should be denied.

---

[1]    Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court Clerk shall be directed to substitute William A. Sherrod, the current warden at USP Pollock, and E. Scott Pruitt, the current Attorney General of the State of Oklahoma, as the party Respondents.

[2]    References to the trial transcript of the first trial shall be referred to as "Tr. Trans. Vol. ___ at ___." Reference to the resentencing trial transcript shall be referred to as "Tr. Trans. II Vol. ___ at ____." The original state court record for Tulsa County District Court Case No. CF-1999-4583 shall be identified as "O.R. Vol. ___ at ____." Motion hearings shall be identified as "M. Trans. (date) at ____."

**BACKGROUND**

I.     **Factual Background**

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed correct. Following review of the record, including the trial transcripts and evidence, this Court finds that the factual summary provided by the Oklahoma Court of Criminal Appeals (OCCA) in its order resolving Petitioner's second direct appeal is adequate and accurate. Therefore, the Court adopts the following factual summary as its own:

> Hanson and Miller kidnapped Mary Bowles from the Promenade Mall in Tulsa in the late afternoon of August 31, 1999. They drove her in her car to an isolated area around a dirt pit near Owasso. Jerald Thurman, the pit's owner, was there loading a dump truck for a delivery. Thurman was talking to his nephew on a cell phone when he saw the car circling through the pit. Moments later, with Hanson and Mary Bowles still in the car, Miller shot Thurman four times with a .38 revolver. Miller moved the car a short distance from the shooting, stopped, and told Hanson he knew what he had to do. Thereupon, Hanson took Bowles out of the car and, as she lay in a roadside ditch, shot her multiple times with his 9 mm semiautomatic pistol. The two men covered her body with branches and fled. Neighbors across the street from the dirt pit heard gunshots and saw an unfamiliar car leaving the pit area. Investigating, they found Thurman lying near his dump truck at the roadway entrance to the pit. He was taken to the hospital, but died two weeks later without regaining consciousness. Bowles's decomposed body was found in the roadside ditch on September 7.
>
> Hanson and Miller abandoned Bowles's car at the Oasis Motel a few miles away. The car was not discovered there until September 9. Police lifted Hanson's and Miller's fingerprints from the seatbelt buckles and discovered that Hanson had rented a room there shortly after the murders. The motel clerk did not see Hanson or his companion after Hanson filled out the registration card on August 31st.
>
> On September 3, 1999, Hanson and Miller robbed the Dreamland Video Store. Hanson tied up a customer in a backroom, put a gun to his head and took his wallet. On September 8, the pair robbed the Tulsa Federal Employees Credit Union.
>
> The crime spree came to an end when, on September 9, Miller's wife made an anonymous phone call telling police that Hanson and Miller, the credit union robbers, were at the Muskogee Econolodge. Law enforcement officials from various jurisdictions coordinated this information and arrested Miller and Hanson there.

2

Miller came out immediately; Hanson stayed in the room until driven out by tear gas. While alone in the room Hanson hid the murder weapons in the toilet tank.

Hanson's former co-worker, Rashad Barnes, testified that Hanson had stopped by his home a few days before that arrest in Muskogee and confessed that he and Miller "carjacked" an old lady and that he (Hanson) had killed her.

Hanson v. State of Oklahoma, 206 P.3d 1020, 1025 (Okla. Crim. App. 2009) (footnotes omitted) (hereinafter Hanson II).  Additional facts necessary for a determination of Petitioner's claims will be set forth in detail throughout this opinion.

## II.     Procedural history

Petitioner was charged jointly with co-defendant, Victor Cornell Miller, for the First Degree Murder of Mary Agnes Bowles (Count I), and First Degree Murder of Jerald Thurman (Count II). O.R. Vol. I at 95-96. The counts were charged alternatively as malice aforethought or felony murder. Id.  Hanson's and Miller's cases were severed for trial. On February 28, 2000, the State filed a Bill of Particulars seeking the death penalty against Petitioner on the first degree murder charges, alleging the following four aggravating circumstances: (1) the defendant was previously convicted of a felony involving the use or threat of violence to the person;  (2) the defendant knowingly created a great risk of death to more than one person; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (4) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. Id. at 108.

Following a jury trial held May 7-23, 2001, Petitioner was found guilty of both counts.[3] O.R. Vol. III at 523-26. He was represented at trial by attorneys Jack Gordon and Eric Stall. As to Count I, the jury found the existence of three (3) aggravating circumstances, but did not find that the murder of Mary Bowles was committed for the purpose of avoiding or preventing a lawful arrest or conviction. Id. at 542. The jury recommended that he receive a sentence of death for the murder of Mary Bowles (Count I). Id. at 544. As to Count II, the jury found the existence of two (2) aggravating circumstances, id. at 543, but did not recommend a death sentence. Instead, the jury recommended that Petitioner be sentenced to life without the possibility of parole for the murder of Jerald Thurman. Id. at 548.

On appeal to the OCCA, Petitioner's first degree murder convictions were affirmed, but the death sentence on Count I was reversed and remanded for a new trial. Hanson v. State of Oklahoma, 72 P.3d 40, 45 (Okla. Crim. App. 2003) (hereinafter Hanson I). His sentence on Count II was affirmed. Id. At the time of the direct appeal decision, Petitioner had a pending application for post-conviction relief in OCCA Case No. PCD-02-628. It was dismissed as moot, and Petitioner was advised that he could re-file his application after conclusion of the resentencing trial. O.R. Vol. VII at 1270-71; Dkt. # 13, Ex. 12.

Shortly before the resentencing trial was to begin, Petitioner learned of new evidence that co-defendant Miller had confessed to shooting a woman, purportedly Mary Bowles. Trial counsel filed an application for post-conviction relief in the district court seeking reversal of his conviction on Count I, and a new trial on both guilt and punishment. O.R. Vol. VII at 1252-59. The trial judge

---

[3]     The jury was provided separate verdict forms for the alternate theories of first degree murder on each count, and found Petitioner guilty on all theories except one - malice aforethought murder on Count II (Jerald Thurman). See O.R. Vol. III at 523-26.

granted the application. Id. at 1352-53. The State appealed the trial court's ruling, id. at 1357, and moved for a writ of prohibition. O.R. Vol. VIII at 1393. The OCCA granted the State's petition for writ of prohibition, finding that the district court lacked jurisdiction because the OCCA has original jurisdiction over post-conviction matters in capital cases. Id. at 1418-20. The OCCA ordered the district court to commence the resentencing trial in accordance with its previous order in Hanson I.      Petitioner's resentencing trial was held January 9-24, 2006. He was represented at this trial by attorneys Jack Gordon and Steven Hightower. Once again, a jury recommended a sentence of death for Petitioner. The jury found the existence of three (3) aggravating factors: (1) the defendant, prior to the murder, was convicted of a felony involving the use or threat of violence to the person; (2) during the commission of the murder, the defendant knowingly created a risk of death to more than one person; and (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. O.R. Vol. IX at 1563. The jury did not find that there exists a probability that Petitioner will commit criminal acts of violence that would constitute a continuing threat to society. Id. The trial judge, in accordance with the jury's recommendation, sentenced Petitioner to death for the Count I First Degree Murder conviction. Id. at 1646.

Petitioner appealed his death sentence to the OCCA in Case No. D-2006-126. Represented by Oklahoma Indigent Defense System (OIDS) attorneys Jamie Pybas and Kathleen Smith, Petitioner raised the following nine (9) propositions of error:

| | |
|---|---|
| Proposition I: | Mr. Hanson's rights to due process of law and a reliable sentencing hearing under the Eighth and Fourteenth Amendments and his confrontation rights under the Sixth Amendment were violated when the trial court overruled defense objections to the use of hearsay testimony of Rashad Barnes. |
| Proposition II: | This court abused its discretion in granting the State's application for a writ of prohibition and reversing the district court's grant of a new |

trial on newly discovered evidence, violating Appellant's due process rights under the Fourteenth Amendment and Article II, §§ 7 and 20 of the Oklahoma Constitution.

Proposition III:    The prosecution engaged in deliberate misconduct, depriving Mr. Hanson of his rights to a fair and reliable sentencing hearing.

Proposition IV:    Mr. Hanson was deprived of the reasonably effective assistance of counsel guaranteed him by the Sixth Amendment to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

Proposition V:    The jury's finding that during the commission of the murder, the defendant knowingly created a great risk of death to more than one person violates Appellant's constitutional rights because the evidence was insufficient to support the finding, the prosecutor materially misled the jury about the law, and the instructions inadequately guided the jury's discretion.

Proposition VI:    Several errors involving the "murder to avoid lawful arrest or prosecution" aggravating circumstance violated Mr. Hanson's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 9, and 20 of the Oklahoma Constitution.

Proposition VII:    The trial court's failure to instruct Mr. Hanson's jury on the meaning of life without the possibility of parole violated Mr. Hanson's rights under the Eighth and Fourteenth Amendments.

Proposition VIII:    The definition of mitigating circumstances contained in Oklahoma's uniform jury instructions impermissibly limits consideration of mitigating evidence in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 9 and 20 of the Oklahoma Constitution.

Proposition IX:    The accumulation of error in this case deprived Mr. Hanson of due process of law and a reliable sentencing proceeding in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution.

See Brief of Appellant in OCCA Case No. D-2006-126.  On April 13, 2009, after invalidating the

jury's finding of the "great risk of death to more than one person" aggravating circumstance, the

6

OCCA affirmed Petitioner's first degree murder conviction and death sentence. Hanson II, 206 P.3d at 1936.

Petitioner filed an application for post-conviction relief on June 30, 2008, in OCCA Case No. PCD-2006-614. Represented by OIDS attorneys Robert W. Jackson and Anastasia Cesario, he presented the following three (3) grounds for relief:

| | |
|---|---|
| Proposition One: | Evidence discovered after Mr. Hanson's original trial and prior to the resentencing hearing entitles him to a new proceeding encompassing both the issues of guilt/innocence and punishment. |
| Proposition Two: | The absence of any assurance that the jury unanimously agreed on the same "predicate crime" to support the "avoid arrest" aggravating circumstance renders the finding of the circumstance invalid. |
| Proposition Three: | Mr. Hanson should be afforded relief due to the cumulative impact of errors identified in this application and in his direct appeal brief. |

See Application for Post-Conviction Relief in OCCA Case No. PCD-2006-614. All requested relief was denied on June 2, 2009 (Dkt. # 13, Ex. 13).

Petitioner's next application for post-conviction relief was filed on January 26, 2011, after the filing of the instant habeas corpus case. Represented by attorney Robert S. Jackson,[4] in OCCA Case No. PCD-2011-58, he raised the following proposition of error:

---

[4]      Robert S. Jackson is an attorney with the Federal Public Defender's Office, and advises that he is not related to Robert W. Jackson, the OIDS attorney who filed the first application for post-conviction relief. See Successive Application for Post-conviction Relief in OCCA Case No. PCD-2011-58 at 23 n.6.

Proposition One: Mr. Hanson received the ineffective assistance of trial, appellate, and post-conviction counsel for their failures to investigate and/or present legal propositions regarding his mental illness and cognitive dysfunction.

<u>See</u> Successive Application for Post-Conviction Relief in OCCA Case No. PCD-2011-58. The requested relief was denied on the merits in an order filed March 22, 2011. <u>See</u> Order Denying Second Application for Post-Conviction Relief and Motion for Evidentiary Hearing.

Petitioner initiated this federal habeas action on February 24, 2010, by filing an application to proceed in forma pauperis (Dkt. # 2), and a request for appointment of counsel (Dkt. # 1). In his petition filed December 6, 2010, Petitioner identifies the following nine (9) grounds for relief:

Ground One: Mr. Hanson was denied an adequate opportunity to confront the witnesses against him by the trial court's admission of the testimonial hearsay of Rashad Barnes.

Ground Two: Mr. Hanson's right to due process of law was violated by the Oklahoma Court of Criminal Appeals' reversal of the district court's grant of a new trial on the basis of newly discovered evidence.

Ground Three: Mr. Hanson received ineffective assistance of counsel at trial and on appeal thereby violating his rights under the Sixth and Fourteenth Amendments of the United States Constitution.

Ground Four: Mr. Hanson's trial was rife with prosecutorial misconduct such that he was denied a fair trial, and a reliable sentence in violation of the Sixth, Eighth, and Fourteenth Amendments.

Ground Five: Invalidation of the great risk of death aggravating circumstance required invalidation of the death sentence.

Ground Six: Errors involving the "murder to avoid lawful arrest or prosecution" aggravating circumstance violated Mr. Hanson's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Ground Seven:          The State's failure to allege with specificity the predicate crime for which Mary Bowles' murder was committed in order to avoid arrest or prosecution violated Mr. Hanson's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

Ground Eight:          The definition of mitigating circumstances contained in Oklahoma's uniform jury instructions impermissibly limits consideration of mitigation evidence, and moreover the prosecutors in this case exploited the instruction improperly to deaden or eliminate the jury's consideration of important mitigation evidence in violation of the Sixth, Eighth, and Fourteenth Amendments.

Ground Nine:          The cumulative effect of errors at both phases of trial deprived Mr. Hanson of his constitutional rights under the Eighth and Fourteenth Amendments.

(Dkt. # 13).

## GENERAL CONSIDERATIONS

### I.    Exhaustion

Generally, federal habeas corpus relief is not available to a state prisoner unless all state court remedies have been exhausted prior to the filing of the petition. 28 U.S.C. § 2254(b)(1)(A); Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994); see also Wainwright v. Sykes, 433 U.S. 72, 80-81 (1977) (reviewing history of exhaustion requirement). In every habeas case, the Court must first consider exhaustion. Harris, 15 F.3d at 1554. "States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991) (explaining that the exhaustion requirement is "grounded in principles of comity"). In most cases, a habeas petition containing both exhausted and unexhausted claims is deemed a mixed petition requiring dismissal. Where it is clear, however, that a procedural bar would be applied by the state courts if the claim were now presented, the reviewing habeas court can examine the claim under a procedural bar analysis instead of requiring exhaustion. Coleman, 501

U.S. at 735 n.1 (citations omitted). Also, the Court has the discretion to ignore the exhaustion requirement altogether and deny the petition on the merits if the claim lacks merit. <u>Fairchild v. Workman</u>, 579 F.3d 1134, 1156 (10th Cir. 2009); 28 U.S.C. § 2254(b)(2). In this case, Petitioner's grounds have been presented to the OCCA in either direct appeal or post-conviction proceedings, and are exhausted for habeas review purposes.

## II.      Standard of Review - AEDPA

This Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).   <u>Snow v. Sirmons</u>, 474 F.3d 693, 696 (10th Cir. 2007).   Under AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. <u>Alverson v. Workman</u>, 595 F.3d 1142, 1146 (10th Cir. 2010) (citing <u>Snow</u>, 474 F.3d at 696). When a state court has adjudicated a claim on the merits, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established[5] Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>See</u> 28 U.S.C. § 2254(d)(1)(2); <u>Williams v. Taylor</u>, 529 U.S. 362, 402 (2000); <u>Neill v. Gibson</u>, 278 F.3d 1044, 1050-51 (10th Cir. 2001).

The first step in applying § 2254(d)(1) standards is to assess whether there was clearly established federal law at the time the conviction became final, as set forth in the holdings of the Supreme Court. <u>House v. Hatch</u>, 527 F.3d 1010, 1016-17 (10th Cir. 2008). If clearly established federal law exists, the Court must then consider whether the state court decision was contrary to, or

---

[5]      A legal principle is "clearly established" within the meaning of this provision only when it is embodied in a holding of the Supreme Court. <u>See</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006).

involved an unreasonable application of, Supreme Court law. Id. at 1018. When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). It is not necessary, however, that the state court cite to controlling Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts Supreme Court law. Early v. Packer, 537 U.S. 3, 8 (2002).

Application of § 2254(d)(2) requires the Court to review any factual findings of the state court to ascertain whether they were unreasonable in light of the evidence presented at trial. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 291 (2010) (citing Rice v. Collins, 546 U.S. 333, 341-42 (2006)). The "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## GROUNDS FOR RELIEF

### I.      Denial of right to confront witness (ground 1)

At Petitioner's resentencing trial, the State presented testimony of Rashad Barnes, deceased, by reading the transcript of his testimony from the first trial. Petitioner contends in his ground one claim that this violated his constitutional right to confront the witness with impeachment evidence[6]

---

[6]      The OCCA summarized the new impeachment evidence as: (1) a statement made by co-defendant Miller to a third party that he had killed a woman (presumably Mary Bowles), and (2) Miller's testimony at his own trial, subsequent to Petitioner's first trial, that Barnes and Petitioner committed the murders. Hanson II, 206 P.3d at 1026.

11

discovered after the witness had died (Dkt. # 13 at 31-42). This claim was rejected by the OCCA on direct appeal. Respondent argues that the OCCA's decision was not contrary to, or an unreasonable application of Supreme Court law, nor was it an unreasonable determination of the facts.

Relying on Crawford v. Washington, 541 U.S. 36 (2004), the OCCA denied Petitioner's claim, finding as follows:

> Testimony from a former trial is the kind of "testimonial hearsay" admissible under *Crawford* when two fundamental Sixth Amendment conditions are met: (1) the witness must be unavailable, and (2) the defendant must have had a prior opportunity to cross examine the witness. *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374. Hanson does not contest that Barnes was unavailable at his resentencing trial; nor does he contend that he was unable to cross-examine Barnes to challenge Barnes's testimony inculpating him in the murders of Jerald Thurman and Mary Bowles with evidence available at the time of his first trial. He argues instead that his prior opportunity to examine Barnes was constitutionally inadequate because new impeachment evidence was discovered after the first trial.
> . . .
> Hanson cross-examined Barnes at his original trial and exposed the weaknesses in his testimony. The evidence that Miller had told another inmate that he killed the woman himself was presented at Hanson's resentencing trial through the testimony of Detective Michael Nance. Miller's statement taking responsibility for shooting a woman was admitted as a statement against penal interest and was offered to show that Hanson was not the triggerman in Bowles's murder. Hanson's resentencing jury had the evidence of Miller's purported admission to the inmate and the circumstances surrounding that statement to consider and weigh against Barnes's testimony about Hanson's alleged confession to him. We cannot find under these circumstances that the discovery of Miller's statement rendered Hanson's prior opportunity to cross-examine Barnes constitutionally inadequate or that the trial court erred in admitting Barnes's testimony via transcript under *Crawford*.
>
> Hanson never alleged at trial that his prior opportunity to cross-examine Barnes at the first trial was inadequate because of Miller's subsequent trial testimony implicating Barnes. In fact, defense counsel told the trial court specifically that the defense had not developed any other impeachment evidence except Miller's alleged confession to another inmate. Because Hanson failed to object to the admission of Barnes's testimony on this basis, we review only for plain error and find none. *See Malone v. State*, 2007 OK CR 34, ¶ 84, 168 P.3d 185, 218.

12

There were sound reasons to shield Hanson's jury from evidence of Miller's testimony, including: 1) that Miller's trial testimony inculpated Hanson; 2) that Miller's trial testimony was inconsistent with his later admission regarding the murder of Bowles; and 3) that Miller's testimony exculpating himself and implicating Barnes was refuted by objective facts. On this record, we cannot find that Hanson's opportunity to cross-examine Barnes at his first trial was inadequate. For this reason, we find that the admission of Barnes's testimony was in compliance with the requirements of *Crawford*. Hanson's claim that he was denied his rights under the Confrontation Clause is denied.

Hanson II, 206 P.3d at 1026-27 (footnotes omitted).

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to be confronted with the witnesses against him. Crawford, 541 U.S. at 38.  In Crawford, the Supreme Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Id. at 53-54. However, "[w]hile its protections are strong, '[t]he [Confrontation] Cause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" Wilson v. Sirmons, 536 F.3d 1064, 1111 (10th Cir. 2008) (quoting Crawford, 541 U.S. at 59 n.9). In addition, the Tenth Circuit has noted that it is "far from clear" whether the Confrontation Clause even applies at capital sentencing proceedings. Id. (citing United States v. Barrett, 496 F.3d 1079, 1099 (10th Cir. 2007)).

In Petitioner's case, Rashad Barnes testified for the State at the first trial that Petitioner made incriminating statements to him soon after the murders. See Tr. Trans. Vol. VII at 1158-65. Barnes testified that Petitioner was "real nervous, real jittery" when he came to Barnes' house in August 1999, id. at 1159; Petitioner kept saying that "everything went bad," id. at 1160; and Petitioner told Barnes that he and Victor Miller took a car from an old lady at Promenade Mall in Tulsa, Oklahoma. Id. at 1160-61. They put her in the backseat and drove to a back road where they were going to let

13

her out. Id. at 1161. A man in a dump truck saw them, so Victor Miller shot the man. Id. at 1162.

Miller then told Petitioner, "You know what you have to do." Id.  Barnes testified that Petitioner

then told him that he "shot the old lady." Id. at 1163.  Petitioner told him they left the lady on a back

road after covering her body with some bushes. Id.  Petitioner and Miller then went to a hotel,

cleaned the car out, but had to abandon the lady's car at the hotel when it wouldn't restart. Id. Barnes

testified that Petitioner was "terrified" as he was telling Barnes the story. Id. at 1164. After the direct

examination, Petitioner's counsel conducted a thorough cross-examination. Id. at 1174-84.

Following Petitioner's first trial and conviction, his co-defendant, Victor Miller, was tried

and convicted of two counts of First Degree Murder. See Miller v. State, 98 P.3d 738, 739 (Okla.

Crim. App. 2004). Barnes also testified at Miller's trial. Id. at 741-42. In December 2003, before

Petitioner's resentencing trial, Barnes was killed in an unrelated incident. Because Barnes was

unavailable to give live testimony, the transcript of his testimony from the first trial was read to

Petitioner's resentencing jury. See Tr. Trans. II Vol. VII at 1338-76.

It is uncontroverted that Barnes was unavailable, and that Petitioner had cross-examined

Barnes during his testimony at the first trial. However, Petitioner argues that because new

impeachment evidence was discovered after Barnes testified at the first trial, his prior opportunity

to cross-examine Barnes was constitutionally inadequate. See Dkt. # 13 at 36. Significantly, the

challenged testimony of Barnes took place at Petitioner's resentencing trial. The focus of the

prosecution's proof concerned aggravating evidence supporting the State's call for a death sentence.

Of less importance was evidence related to whether Petitioner, his co-defendant Miller, or someone

else fired the fatal shot which killed Mary Bowles. See e.g., Littlejohn v. Trammell, 704 F.3d 817,

845 (10th Cir. 2013). Petitioner's conviction for the First Degree Murder of Mary Bowles had

already been affirmed by the OCCA. Hanson I, 72 P.3d 40.  Petitioner argues that he should have been given the opportunity to impeach Barnes' testimony regarding the confession made to Barnes. However, because the OCCA had already affirmed Petitioner's guilty verdict, any error in the admission of Barnes' testimony would have little consequence on the sentencing decision facing the jury. Assuming, without deciding, that the Confrontation Clause applies in capital sentencing proceedings, the Court concludes that Petitioner's rights were not violated by the admission of Barnes' testimony through the reading of the transcript from the first trial. Petitioner has not demonstrated that the OCCA's decision was contrary to, or an unreasonable application of, Crawford, or that it was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). He is not entitled to habeas relief on his ground one claim.

## II.     Trial court's post-conviction error (ground 2)

Petitioner next claims that the OCCA violated his right to due process of law when it reversed the trial court's grant of a new trial based on newly discovered evidence. The OCCA held that it had previously decided that the district court was without jurisdiction to decide Petitioner's post-conviction application for a new trial, and it would not reconsider the issue based on the "law of the case" doctrine. Hanson II, 206 P.3d at 1027-28.

A brief review of the procedural history surrounding this issue provides a basis for the Court's denial of relief on this claim. Just five days before his resentencing trial was to begin, Petitioner learned that his co-defendant had told another inmate that he, not Petitioner, had shot a woman. Petitioner filed an application for post-conviction relief in district court, requesting a new trial because of newly discovered evidence. See O.R. Vol. VII at 1252. The district court granted the application. Id. at 1352-53. The State filed an appeal of the district court's ruling (id. at 1375-

15

93), and an emergency application to assume original jurisdiction and petition for writ of prohibition, or in the alternative, a writ of mandamus (id. at 1393-1410). The OCCA consolidated the appeals for review and granted the writ of prohibition, holding that the district court did not have jurisdiction to adjudicate Petitioner's post-conviction application because the OCCA "alone has the power to consider post-conviction applications in capital cases." Id. at 1418-20. The district court's order granting Petitioner a new trial was vacated, and the matter was remanded to the district court to conduct the resentencing trial ordered in Hanson I. Id.

This claim, challenging a ruling related to the district court's authority to render a post-conviction decision, is not cognizable in a federal habeas proceeding. Under § 2254, a petitioner may obtain relief only for errors in the state judgment forming the basis for incarceration. See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction"). Federal habeas relief is not available to remedy defects in the state post-conviction proceeding, a proceeding collateral to detention. See United States v. Dago, 441 F.3d 1238, 1248 (10th Cir. 2006). Petitioner's constitutional argument arises from his contention that the OCCA mistakenly construed Oklahoma law in reversing the district court's grant of a new trial in a post-conviction proceeding. Even if the Oklahoma court erred, the error is one of state law not cognizable in habeas corpus because "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Because the error Petitioner brings in ground two focuses only on issues related to a post-conviction remedy, and not the judgment which provides the basis for his incarceration, it states no cognizable federal

habeas claim. <u>Sellers v. Ward</u>, 135 F.3d 1333, 1339 (10th Cir. 1998). For that reason, relief is denied on Petitioner's ground two claim.

## III.     Prosecutorial misconduct (ground 4)

In Petitioner's ground four claim, he asserts that the improper tactics and arguments of the prosecutor in both the first trial and resentencing deprived him of a fair trial and a reliable sentencing proceeding, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Specifically, he complains that the prosecutor committed the following acts of misconduct at his first trial: (1) inflamed the passions of the jury and garnered sympathy for the victim; (2) improperly called Petitioner names; (3) improperly vouched for witness Rashad Barnes; (4) ridiculed the defense; and (5) played on the jurors' fears by raising societal alarm. Petitioner further argues that the cumulative effect of these instances of misconduct entitle him to relief. Petitioner also contends that the following instances of prosecutorial misconduct occurred during his resentencing trial when the prosecutor: (1) inflamed the passions of the jury; (2) improperly compared the sentencing options; (3) argued facts that were not in evidence; (4) vouched for witness Rashad Barnes; (5) incorrectly explained the "great risk of death" aggravator; and (6) invoked societal alarm. Petitioner again argues that the cumulative effect of these improper acts deprived him of a fair trial.

The Supreme Court has established rules that govern a petitioner's prosecutorial misconduct claims. "Generally, a prosecutor's improper remarks require reversal of a state conviction only if the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Le v. Mullin</u>, 311 F.3d 1002, 1013 (l0th Cir. 2002) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). "Alternatively, if the alleged prosecutorial misconduct denied the

17

petitioner a specific constitutional right (rather than the general due process right to a fair trial), a valid habeas corpus claim may be established without proof that the entire trial was rendered fundamentally unfair." Id.  Not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation. See Caldwell v. Mississippi, 472 U.S. 320, 338 (1985) (plurality opinion). Federal law clearly provides that in order to constitute a due process violation the prosecutorial conduct must be of sufficient significance to result in the denial of a defendant's right to a fair trial. Donnelly, 416 U.S. at 645.

This Court's inquiry into the fundamental fairness of a trial can only be made after examining the entire proceeding.  Donnelly, 416 U.S. at 643.  The complained of remarks or arguments must be considered in the context in which they were made.  Greer v. Miller, 483 U.S. 756, 765-66 (1987); see also Darden v. Wainwright, 477 U.S. 168, 179 (1986). The Tenth Circuit directs that:

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." . . . We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . . Ultimately, we "must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."

Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (citations omitted).  In addition, the Court must consider the prejudice, if any, attributable to the prosecutor's comments.  Brecheen v. Reynolds, 41 F.3d 1343, 1355 (10th Cir. 1994) (citing Mahorney v. Wallman, 917 F.2d 469, 472-73 (10th Cir. 1990)).  This Court has examined the transcripts from both the first trial and the resentencing, and will apply the principles established by the Supreme Court to Petitioner's individual instances of alleged prosecutorial misconduct.

18

A.      **First trial**

1.      **Sympathy for the victim**

Petitioner first claims that the prosecutors made a concerted effort throughout his first trial

to portray the victim, Mary Bowles, as a sympathetic character. In rejecting this issue on direct

appeal, the OCCA found as follows:

> The prosecutor's descriptions of Bowles accurately describe the evidence, or are within the wide latitude afforded in argument. Hanson fails to show that the prosecutor's comments were so grossly improper and unwarranted that they affected his rights, and this proposition is denied.

Hanson I, 72 P.3d at 50. A review of the entire trial transcript reveals that the prosecutor did, in fact,

draw the jury's attention to the fact that Mary Bowles was an elderly, defenseless woman, who was

liked by all and spent her time doing volunteer work at the hospital. However, as noted by the

OCCA, these descriptions of the victim were supported by the evidence. Petitioner has not

convinced the Court that the complained of remarks could have "tipped the scales in favor of the

prosecution."

Fero, 39 F.3d at 1474. The Court finds that Petitioner's right to a fair trial was not jeopardized by

the prosecutor's various comments about Mary Bowles. Habeas relief is denied on this issue.

2.      **Name-calling**

Petitioner next complains that the prosecutor used disparaging terms in referring to Petitioner

and his co-defendant. During first stage closing arguments, the prosecutor called Petitioner a "two-

time, cold-blooded murderer." See Tr. Trans. Vol. X at 1744, 1746. The prosecutor also compared

Petitioner and his co-defendant to jackals, noting that jackals "travel in packs and they drag down

the weak." Id. at 1749. The OCCA agreed that prosecutors should avoid name-calling, but concluded

that the statements did not improperly affect the jury's decision. Hanson I, 72 P.3d at 49-50. This

Court agrees that pejoratives are inappropriate. However, there was ample evidence to support the jury's guilty verdict on the First Degree Murder count. Thus, the name-calling, however improper, did not rise to the level of the denial of Petitioner's due process rights. See e.g., Wilson v. Sirmons, 536 F.3d 1064, 1118 (10th Cir. 2008) (finding no constitutional error even though the prosecutor's use of the pejorative terms "animal" and "unadulterated evil" to describe the defendant was unprofessional, inappropriate, and unworthy of an officer of the court).

### 3.      Improper vouching

Petitioner next contends that his trial was rendered unfair because the prosecutor bolstered Barnes' credibility and garnered sympathy for him by emphasizing how brave Barnes was to come forward and testify even though he was called a snitch by others. On direct appeal, the OCCA found no improper vouching by the prosecutor, stating as follows:

> Hanson claims the prosecutor improperly vouched for Rashad Barnes's truthfulness and argued facts not in evidence concerning him. The prosecutor argued that Barnes had become a third victim in the case when he became a snitch; Barnes testified that he failed to contact police and was unhappy about testifying because he had a snitch label. The prosecutor also argued Hanson was trying to accuse Barnes to save himself. This is exactly what defense counsel suggested during closing argument; that Barnes, not Hanson, committed the crimes with Miller. This was a reasonable characterization of Hanson's case.

Hanson I, 72 P.3d at 50. The OCCA made further observations in the following footnote:

> Hanson incorrectly claims this is vouching for a witness's credibility. Vouching occurs when a prosecutor expresses a personal belief in a witness's credibility, either through explicit assurances or by implying that other evidence, not presented to the jury, supports the witness's testimony.

Id. at n.28 (citation omitted).            Petitioner has failed to demonstrate that the OCCA's decision was an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §

2254(d)(2). The prosecutor's comments did not violate Petitioner's due process rights. Habeas relief

is denied on this claim.

### 4.      Ridicule of the defense

Petitioner also alleges that the prosecutor improperly attacked the defense and defense

counsel. Specifically, he complains about the following statements made by the prosecutor during

first stage closing argument:

> Many times there's what I call the ink defense. An octopus has no self-defense except an ink bag. When it's in danger of a predator -- Hiding from the facts. Let's look at the facts and let's look to see if the screen can keep us from seeing the guilt of the defendant. The answer is no.

Tr. Trans. Vol. X at 1726.

> I've got to point something out, folks. What he just stood up here and put forward as a theory is not theory; it's theater. A theory requires facts, not I think and maybe this and what if they had talked to so and so. That's not theory; that's theater.
>
> The only thing you've heard in here about Rashad Barnes or anybody else had come out of their mouths. And, folks, he told you right up front, our statement of the case, our information is not evidence. You know why? Because that's just what we say and talk is cheap. Don't sing it, bring it. And we brought it. We brought the case that proved that he's a two-time, cold-blooded killer. And their X-Files rendition does not change the facts.

Id. at 1744.

> Standing back here with a witness on the stand that's put theirself [sic] on the line and taken that oath and withstood what they've got to withstand to come up here and tell what they know, that's the evidence. Standing out here waving documents at them and trying to make them tell you something that's not in the document, that's not evidence; that's theater.

Id. at 1745. The OCCA denied relief on this claim, finding that the comments were inappropriate

but did not require relief. Hanson I, 72 P.3d at 49.

"[P]rosecutors may not . . . cast aspersions upon the defendant through offhand comments, . . . nor [make] personal attacks upon the integrity of defense counsel." United States v. Holmes, 413 F.3d 770, 775 (8th Cir. 2005) (citing McDonnell v. United States, 457 F.2d 1049, 1052-53 (8th Cir. 1972) (finding that a prosecutor deserved censure for admittedly describing defense counsel's offer of proof as a "common trick," but finding no abuse of discretion in the denial of a motion for mistrial). However, the strength of the state's case against Petitioner leads the Court to conclude that Petitioner was not prejudiced by the prosecutor's remarks. See e.g., United States v. Splain, 545 F.2d 1131, 1135 (8th Cir. 1976) (finding that an improper argument is less likely to have affected the verdict in a case when the evidence is overwhelming than in a case where the evidence is weak). Improper comments merit relief if the Court finds that the comments, in the context of the trial as a whole, could reasonably have affected the jury's verdict. Holmes, 413 F.3d at 776. The Court agrees with the OCCA that the comments were improper. However, in light of the entire trial, the remarks did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. Donnelly, 416 U.S. at 643. The OCCA's decision was not an unreasonable application of Supreme Court law. 28 U.S. § 2254(d).

**5.    Societal alarm**

As his next proposition of error, Petitioner complains that the prosecution engaged in misconduct when it raised societal alarm about Petitioner with the following arguments during first stage closing:

> It wasn't going to stop with a car. It wasn't going to stop with their lives. They were going to take and they were going to take and whoever they had to burn was going to burn, because this is their world. It's a world where jackals reign. They travel in packs and they drag down the weak, and we pay the price. And two people paid the ultimate price with their lives.
> . . .

22

> What happens if that car doesn't break down? Who knows? Maybe they're still out there. Maybe we've got a file of dead bodies.
> . . .
> [A]fter they killed two people . . . they went and did a robbery with the same guns that had killed two people. . . .These people matter. And it's your vote that matters.

Tr. Trans. Vol. X at 1749-50. The OCCA reviewed these allegations of prosecutorial misconduct when asserted on direct appeal, and found as follows:

> The prosecutor, describing the crimes, asked rhetorically what might have happened had Bowles's car not broken down, and suggested perhaps there would be a file of dead bodies. He also stated that Miller and Hanson were jackals who traveled in packs and preyed on the weak, and said "we" pay the price. A prosecutor should not encourage jurors to let improper sympathy, sentiment or prejudice influence their decisions. . . . Hanson fails to show that the prosecutor's comments were so grossly improper and unwarranted that they affected his rights, and this proposition is denied.

Hanson I, 72 P.3d at 50 (footnotes omitted). Petitioner has failed to show that the prosecution's conduct was so egregious in the context of the entire trial that it rendered his trial fundamentally unfair. Donnelly, 416 U.S. at 642-48; Cummings v. Evans, 161 F.3d 610, 618 (10th Cir.1998). He has not demonstrated that the OCCA's decision was an unreasonable application of Supreme Court law. Accordingly, habeas relief is denied on this claim

### 6.   Cumulative effect

After reviewing the entire trial transcript, this Court finds that the OCCA's rejection of his prosecutorial misconduct claims in Hanson I was not an unreasonable application of Supreme Court law. Further, the alleged instances of prosecutorial misconduct, even when viewed in the aggregate, did not plausibly tip the scales in favor of the prosecution. In light of the strength of the evidence presented in this case, the Court finds no reasonable probability that the guilty verdict would have been different without the incidents of alleged misconduct by the prosecutor, and concludes that the

proceedings against Petitioner were not rendered fundamentally unfair by prosecutorial misconduct in the first trial.  Pursuant to § 2254(d), habeas corpus relief shall be denied.

**B.     Resentencing**

In <u>Hanson II</u>, the OCCA addressed Petitioner's various claims of prosecutorial misconduct which allegedly occurred during closing arguments of the resentencing trial. In reviewing the claims, the OCCA evaluated the alleged misconduct within the context of the entire trial, considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel. <u>See</u> <u>Hanson II</u>, 206 P.3d at 1028.

**1.     Sympathy for the victim**

Petitioner maintains that, in his resentencing trial, the prosecutor again focused on the vulnerable and weak character of the victim, and her life as a volunteer. He also complains that the prosecutor improperly focused the jury's attention on the mental torture suffered by Mary Bowles. Rejecting this claim on direct appeal, the OCCA found as follows:

> Hanson claims that the prosecutor attempted to distract and inflame the jury by emphasizing the defenseless and sympathetic character of Mary Bowles and by asking jurors to imagine Bowles's mental state in her final moments. Hanson objected only to three of the remarks he now challenges on appeal. The trial court sustained Hanson's objections each time, curing any error.
>
> The remaining remarks we review for plain error only. In order to warrant relief under the plain error doctrine, Hanson must show that obvious error affected his substantial rights, that is the error affected the outcome of the proceeding. Hanson maintains that the prosecutor's appeals to the jury to consider Bowles's mental state in her final moments was irrelevant because the State had not alleged her murder was especially heinous, atrocious or cruel. It is indeed error for a prosecutor to encourage jurors to impose the death penalty solely out of sympathy for the victims. The prosecutor here, however, argued Hanson's callous treatment of Mary Bowles was relevant to assessing his culpability. Because this was a resentencing trial, this jury had not made a finding of guilt. The prosecutor therefore emphasized the underlying facts of the crime to show that Hanson was culpable and deserving of the most severe punishment. If the prosecutor went too far in his argument about Bowles's mental

24

agony in her final moments, Hanson cannot show that this argument affected the outcome of his trial because as he so aptly states in his brief, "[t]he jurors did not have to be told what must have been going through Mary Bowles's mind as these events unfolded, as they could figure that out on their own." We are not convinced that the prosecutor's argument here rendered Hanson's resentencing trial unfair.

Hanson II, 206 P.3d at 1028-29 (internal citations omitted).  Oklahoma's plain error test is rooted in due process, and the Tenth Circuit has concluded there is no practical distinction between the formulations of plain error and the federal due process test. Thornburg v. Mullin, 422 F.3d 1113, 1124-25 (10th Cir. 2005). The Court agrees with the OCCA that, in light of all the evidence presented at trial, even if the prosecutor's comments were improper, Petitioner has failed to show that they were significant enough to influence the jury's decision. See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998).  His resentencing was not "so infused . . . with unfairness as to deny due process of law." Estelle v. McGuire, 502 U.S. 62, 75 (1991). As a result, Petitioner has failed to demonstrate a reasonable probability that the outcome of his resentencing trial would have been different without the prosecutor's remarks regarding the victim's vulnerability and state of mind. See Hoxsie v. Kerby, 108 F.3d 1239, 1244-45 (10th Cir. 1997).  Upon review of the resentencing trial transcript, this Court finds that the OCCA's rejection of this claim was not an unreasonable application of Supreme Court law. Petitioner is not entitled to habeas corpus relief on this claim.

### 2.    Comments regarding proper punishment

Petitioner next focuses on the prosecutor's closing arguments in which he argued to the jury that life without parole "shouldn't be an option," and is not enough accountability for Petitioner. See Tr. Trans. II Vol. XI at 1863. Petitioner contends that it was improper for the prosecutor to tell the jury that death is mandatory. See Dkt. # 13 at 100. Further, the prosecutor's argument directly undermines the jury's ability to give meaningful consideration to mitigation factors because it

directs the jury to impose death on the basis that Petitioner is already serving a life sentence.[7] <u>Id.</u> at 101. In rejecting this issue on direct appeal, the OCCA provided the following background which further explains the basis for Petitioner's claim and the OCCA's decision.

> Hanson argues that it was error for the prosecutor to urge the jury to sentence him to death by arguing that since he was already serving life without parole only a death sentence could serve to redress the murder of Mary Bowles.

> During closing argument, the prosecutor used slides to highlight evidence and specific jury instructions. Defense counsel objected to a particular slide arguing it was improper for the prosecutor to tell the jury that imposing a life sentence would not give Hanson any more time to serve and would not punish him in any way for the murder of Mary Bowles. The trial court sustained defense counsel's objection. Defense counsel also objected to any other slides containing that argument and the State agreed not to show any slides with that theme. After the ruling, however, the prosecutor continued to argue that life without parole was not acceptable under the facts and that life without parole was not enough to hold Hanson accountable for Bowles's death. Defense counsel objected before the prosecutor could finish his statement. The trial court overruled the objection, saying that it did not construe the prosecutor's argument to violate the prior ruling and cautioning the prosecutor against repeating the objectionable statements.

> The trial court correctly sustained defense counsel's first objection. We agree that it is improper for a prosecutor to argue that a sentence less than death is meaningless and would not hold a defendant accountable for a victim's death when he is already serving a life sentence. The focus of capital sentencing must be on the particular crime under consideration, and on the individual character and record of the defendant who committed it. *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976).

> It is not clear from this record, however, to what extent, if any, Hanson's jury was exposed to improper argument. The record shows that the prosecutor cued a slide, defense counsel objected, the judge instructed someone to turn off the projector, held a sidebar and sustained Hanson's objection. What was on the slide is not in the record before us. The prosecutor noted during the sidebar that the State had not gotten to the objectionable slide. We cannot determine on this record that Hanson was prejudiced by improper argument.

---

[7]    Petitioner is currently serving a life sentence in federal prison for crimes unrelated to the murder of Mary Bowles.

Nor do we find that the trial court abused its discretion in overruling Hanson's objection to the prosecutor's argument that "life without parole is not enough accountability for this defendant." *See Garrison v. State*, 2004 OK CR 35, ¶ 124, 103 P.3d 590, 611 (reviewing trial court's ruling on closing argument objections for an abuse of discretion.) After the court sustained defense counsel's objection, the prosecutor removed slides with the improper argument and argued that the facts and Hanson's record justified a death sentence. Such argument was proper and we find no error.

Hanson II, 206 P.3d at 1029-30.

Upon careful review of the transcript pages that are the focus of Petitioner's complaint, and in light of the entire record, the Court agrees with the OCCA that the record does not support Petitioner's contention that the jury was told that a death sentence was mandatory. See Tr. Trans. II Vol. XI at 1859-64 The prosecutor did urge the jury to return a death sentence, rather than life or life without parole, but there is no error in that argument. Notwithstanding any comments made to the court in a sidebar argument, the prosecutor's comments made to the jury did not so infect Petitioner's trial with unfairness as to make the resulting death sentence a denial of due process. Le, 311 F.3d at 1013.   Petitioner has failed to show that the OCCA's ruling was contrary to, or an unreasonable application of, clearly established Supreme Court law. Relief is denied on this claim.

### 3.   Facts not in evidence

In his next argument, Petitioner claims that the prosecutor "repeatedly argued facts not in evidence when he referenced Bowles' ordeal in her car, the reliability of Ahmad Henry, and Mr. Hanson's prior convictions." See Dkt. # 13 at 102. He claims that this misconduct rendered his resentencing trial fundamentally unfair. Id.

Insofar as Petitioner objects to the references about Mary Bowles' ordeal in the car, the OCCA found the evidence that Petitioner was in the backseat restraining Bowles was in the record. Hanson II, 206 P.3d at 1030. The trial court sustained defense counsel's objection to the prosecutor's

27

statement that he "felt her frail bones" while laying on top of her in the backseat, <u>see</u> Tr. Trans. II

Vol. XI at 1892, and admonished the jury to disregard the statement. The OCCA found this cured

any error concerning that statement. <u>Hanson II</u>, 206 P.3d at 1030. Next, the OCCA addressed the

comments about witness Ahmad Henry, as follows:

> Hanson contends the prosecutor argued facts not in evidence when he argued that Inmate Ahmad Henry was unbelievable because his purpose in contacting homicide detectives was to trade information for favorable treatment. Detective Nance testified that Henry was in custody on a felony charge when he contacted the police department, wanting to talk about "a bunch of murders." According to Nance, no one made any deals with Henry or promised him anything for his information. The prosecutor argued that Henry contacted Nance because he wanted a "deal." Defense counsel objected to this characterization and the State agreed to clarify. The prosecutor informed the jury that although Henry wanted a deal, no deal was ever made. He repeated that Henry got in touch with the police, wanting a deal. When defense counsel objected again, the trial court sustained the objection.
>
> Although Nance never testified that Henry asked for a deal or told Nance that he would give him information in exchange for a deal, it is a fair inference that Henry, faced with his own legal trouble, contacted police with information about various murders seeking a personal benefit rather than out of some sort of civic duty. Error, if any, was cured by sustaining Hanson's objections.

<u>Id.</u> In addition, insofar as Petitioner complains that the prosecutor referenced Petitioner's previous

prison escape conviction, the OCCA concluded that any error was cured when the trial court

sustained trial counsel's objection and admonished the jury to rely on their own memory. Further,

it was of little consequence because the jury rejected the aggravating circumstance that Petitioner

posed a continuing threat to society. <u>Id.</u>  To summarize the OCCA's rulings on Petitioner's claims

that the prosecutor argued facts to the jury which were not in evidence, the OCCA either found no

error or concluded that any error was cured by the trial court sustaining an objection and

admonishing the jury.

28

Petitioner disagrees with the factual conclusions reached by the OCCA. However, he fails to convince the Court that the prosecutor's statements were of sufficient significance to result in the denial of his right to a fair trial. Donnelly, 416 U.S. at 645. He is not entitled to habeas corpus relief on this claim.

### 4.      Improper vouching

Similar to the claim Petitioner made about prosecutorial misconduct in his first trial, Petitioner contends that his resentencing trial was rendered constitutionally unfair because the prosecutor vouched for Rashad Barnes's credibility during rebuttal closing argument. Of specific concern to Petitioner were the prosecutor's comments that Barnes had never been impeached, and has consistently told the truth, followed by the rhetorical question to the jury asking "How would he make that up?" See Tr. Trans. II Vol. XI at 1902, 1904.  The OCCA rejected this claim, finding that the prosecutor's argument concerning the veracity of Barnes "did not constitute impermissible vouching and was not error in this case." Hanson II, 206 P.3d at 1030. Petitioner has not demonstrated that the prosecutor's remarks concerning Rashad Barnes violated his right to a fair trial. The OCCA's finding was not an unreasonable application of Supreme Court law, nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

### 5.      Great risk of death aggravator

Petitioner next claims that the prosecutor purposely misstated the law to the jury when describing the great risk of death to more than one person aggravator. The jury found the existence of this aggravator, see O.R. Vol. IX at 1563, but the OCCA did not find sufficient facts to support this aggravating circumstance. See Hanson II, 206 P.3d at 1033. Accordingly, the OCCA found it unnecessary to discuss Petitioner's complaint about the prosecutor's arguments, given its holding

invalidating the aggravating circumstance, "other than to say that the argument . . . did not render

Hanson's resentencing trial unfair." Id. at 1034.

In Petitioner's case, after finding the great risk of death aggravator invalid, the OCCA

conducted reweighing of the remaining aggravating circumstances and mitigation evidence.

Concluding that the death sentence was supported even though the great risk of death aggravating

circumstance was invalid, the OCCA found as follows:

> Having reviewed the record in this case we find that Hanson's death sentence was
> not the result of trial error, prosecutorial misconduct, or improper evidence or
> witness testimony and that Hanson's death sentence was not imposed under the
> influence of any arbitrary factor, passion, or prejudice.
> . . .
>
> Weighing the valid aggravating circumstances and evidence against the mitigating
> evidence, we find, as did the jury below, that the aggravating circumstances
> outweigh the mitigating circumstances. The judgment and sentence of the district
> court is **AFFIRMED.**

Id. at 1036. Petitioner has not shown that his resentencing was constitutionally unfair because of the

prosecutor's description of the great risk of death aggravator. The OCCA's finding was not an

unreasonable application of Supreme Court law, or based on an unreasonable determination of the

facts. Habeas relief is denied on this claim.

### 6.    Societal alarm

Petitioner next claims that he was deprived of a fair and reliable sentencing hearing because

the prosecutor evoked societal alarm during closing arguments by repeatedly asking the jury to

impose the death sentence in the name of justice. See Dkt. # 13 at 109-10. He objects specifically

to the following portion of the prosecutor's argument:

> And now, we're seven years down the road and you ladies and gentlemen are going
> to write the final chapter. I want to ask you, is it going to be about justice? Is it going
> to be about accountability? . . . And, ladies and gentlemen, when you knock on that

door -- when you knock on that door, you're going to be telling this court what justice is about in this case. You will be doing that, you twelve.

Tr. Trans. II Vol. XI at 1865-66. Denying relief on this claim, the OCCA stated the following:

We have condemned prosecution arguments that the jury cannot do justice without rendering a death verdict. But the prosecutor's pleas for justice in this case are not this sort, and fall within the bounds of acceptable argument. . . . This claim is denied.

Hanson II, 206 P.3d at 1030-31. This Court finds that the prosecutor's comments did not "embed in the jury's sentencing consideration a sense of societal alarm or the need for community justice." Littlejohn, 704 F.3d at 842. The OCCA could reasonably conclude that the remarks were not geared to incite the jury, and did not undermine the fairness of Petitioner's resentencing trial. See Spears v. Mullin, 343 F.3d 1215, 1247-48 (10th Cir. 2003) (holding that "the OCCA's decision denying [the petitioner] relief on [his] claim" based, inter alia, on the prosecutor's argument that "justice cries out for [a conviction]" was not an unreasonable application of Supreme Court precedent and did not result in a "fundamentally unfair trial" in light of the entirety of the record). The Court finds that the comments at issue were not so fundamentally unfair as to deny Petitioner due process. Donnelly, 416 U.S. at 645. Petitioner is not entitled to habeas corpus relief on this claim of prosecutorial misconduct.

## 7.    Cumulative effect

Finally, Petitioner argues that the cumulative effect of the prosecutor's repeated acts of misconduct deprived him of his right to a fair sentencing proceeding and a reliable sentence. Respondent concedes that this claim was raised on direct appeal, but not specifically addressed by the OCCA. See Dkt. # 27 at 88-89. When reviewing a federal claim that has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits, even if the decision contained no explanation for its decision. See Harrington

v. Richter, 131 S.Ct. 770, 784-85 (2011). Therefore, this Court will conduct an independent review of the record and applicable federal law to ascertain whether the state court's denial of relief on Petitioner's cumulative error issue was "contrary to, or involved an unreasonable application of, clearly established federal law" under AEDPA. See 28 U.S.C. § 2254(d); Aycox v. Little, 196 F.3d 1174, 1177-78 (10th Cir. 1999) (OCCA's decision still entitled to deference under § 2254(d) even though federal court must conduct an independent review and articulate an appropriate rationale for OCCA's decision).

The Court has previously concluded that none of Petitioner's claims of prosecutorial misconduct, individually, constitute a violation of Petitioner's rights to a fair sentencing trial. A review of the entire proceedings convinced the Court that the state court correctly resolved the merits of each of Petitioner's claims of prosecutorial misconduct. Likewise, a review of the aggregated claims fails to support Petitioner's assertion that his due process rights were violated. Petitioner's resentencing trial was not rendered fundamentally unfair by the cumulative effect of the alleged misconduct. Thus, the OCCA's rejection of this issue was not an unreasonable application of Supreme Court law or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Habeas relief is denied on this claim.

## IV.    Aggravating circumstances (ground 5)

On direct appeal of the resentencing verdict, Petitioner argued that the jury's finding of the aggravating circumstance that he knowingly created a great risk of death to more than one person was not supported by the evidence because when he killed Mary Bowles, the other victim had already been killed. The OCCA agreed, finding that, "[T]he risk to another person necessary to support this aggravating circumstance does not exist under the unusual facts in this case." Hanson

II, 206 P.3d at 1033. The OCCA then went on to consider what effect the invalidated aggravating circumstance would have on Petitioner's death sentence. The OCCA concluded that the jury's sentence of death would be affirmed. It is that decision Petitioner challenges in ground five. In deciding that invalidation of the great risk of death aggravating circumstance did not require a reversal of Petitioner's death sentence, the OCCA found as follows:

> We now consider what relief, if any, is required. The United States Supreme Court set forth the test to determine when a death sentence must be set aside if an aggravating circumstance is invalidated. "An invalidated sentencing factor . . . will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process unless one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances." Brown v. Sanders, 546 U.S. 212, 220, 126 S.Ct. 884, 892, 163 L.Ed.2d 723 (2006). "If the jury could have properly considered the evidence used to support the invalidated aggravator anyway because it also supported a separate and valid aggravator, the death sentence will stand." Jackson v. State, 2006 OK CR 45, ¶ 44, 146 P.3d 1149, 1164. Under such circumstances, the jury has not considered any improper evidence and has not weighed any improper aggravating evidence against the mitigating evidence in arriving at its sentence. Id.
>
> All the evidence presented to this jury to support a finding that Hanson knowingly created a great risk of death to another person was properly admitted to support the separate and valid aggravating factor that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. The State presented evidence about Thurman's murder to show not only that Hanson endangered more than one person but to show that he killed Mary Bowles so his crime spree could continue and he could avoid responsibility for his prior criminal acts. Under the Brown test, Hanson's death sentence stands because his jury did not improperly consider improper aggravating evidence in deciding punishment.

Hanson II, 206 P.3d at 1033-34. Respondent asserts that the OCCA's decision is entitled to deference, and was not an unreasonable application of Supreme Court law. This Court must decide only whether the OCCA's decision, based on Brown v. Sanders, 546 U.S. 212 (2006), was an unreasonable application of Supreme Court law.

The Sanders Court considered "the circumstances in which an invalidated sentencing factor will render a death sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the jury's weighing process." Id. at 214. Sanders' jury found the existence of four "special circumstances,"[8] but two of the four were declared invalid by the California Supreme Court, although his death sentence was affirmed. Id. at 214-15. Habeas relief on this issue was denied by the District Court, but the Ninth Circuit Court of Appeals reversed. Sanders v. Woodford, 373 F.3d 1054 (2004). Upon review and an extensive discussion of prior cases distinguishing between weighing and non-weighing states, the Supreme Court established new guidelines for reviewing sentence-invalidating factors. Sanders. 546 U.S. at 220. The Sanders test provides that, "[a]n invalidated sentencing factor (whether an eligibility factor or not) will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process *unless* one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances." Id. (emphasis in original). The Court concluded that all of the facts and circumstances considered by Sanders' jury for the two invalid aggravating circumstances were also aggravating facts bearing upon the two valid aggravating circumstances. Thus, they were properly considered by the jury and did not render the jury's sentencing verdict unconstitutional. Id. at 224-25. The OCCA reached a similar conclusion in Petitioner's case and decided that his death sentence was not rendered invalid because the jury found the great risk of death aggravating circumstance, even though it was improperly applied in his case.

---

[8]    The term "special circumstances" in California refers to eligibility factors for the death penalty in the same manner that "aggravating circumstances" is used in Oklahoma.

As noted by the OCCA, the jury also found the existence of the avoid arrest aggravator. It was reasonable for the jury to consider the murder of Jerald Thurman as a motivating factor to kill Mary Bowles. She knew Thurman has been shot by Miller, and right after the Thurman murder, Miller told Petitioner, "[y]ou know what you have to do." Even though the OCCA invalidated the "great risk of death" aggravator, the same facts and circumstances supporting the invalidated aggravating circumstance also supported the "avoid arrest or prosecution" aggravator.  Petitioner has not demonstrated that the OCCA's decision affirming Petitioner's death sentence after invalidating the "great risk of death" aggravator, was an unreasonable application of Sanders. He is not entitled to habeas corpus relief on his ground five claim.

## V.      Avoid arrest or prosecution aggravator (ground 6)

In ground six, Petitioner attacks the "murder to avoid lawful arrest or prosecution" aggravator on three fronts. First, he contends that presenting this aggravating circumstance to the jury in his resentencing trial constituted double jeopardy because the jury in his first trial did not find the existence of this aggravator. Second, he claims that the aggravator is unconstitutionally overbroad. Finally, he argues that there was insufficient evidence to support the aggravator.

### A.      Double jeopardy

In Petitioner's first trial, the jury did not find that the murder of Mary Bowles was committed by Petitioner to avoid arrest or prosecution.[9] See O.R. Vol. III at 542. After identifying numerous

---

[9]      Presented with four possible aggravating circumstances, the jury found that (1) Petitioner was convicted of a felony involving the use of threat of violence to the person; (2) during the commission of the murder, the Petitioner knowingly created a great risk of death to more than one person; and (3) there exists a probability that Petitioner will commit criminal acts of violence that would constitute a continuing threat to society (O.R. Vol. III at 542). The jury did not find that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. Id.

errors in the sentencing stage of the first trial, the OCCA reversed and remanded the case for resentencing. Hanson I, 72 P.3d at 55. At the conclusion of the resentencing trial, the jury found the existence of the following three aggravating circumstances: (1) Petitioner was convicted of a felony involving the use of threat of violence to the person; (2) during the commission of the murder, the Petitioner knowingly created a great risk of death to more than one person; and (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. See O.R. Vol. IX at 1563.[10] As discussed in ground five above, the OCCA invalidated the "knowingly created a great risk of death to more than one person" aggravating circumstance. Hanson II, 206 P.3d at 1033. Petitioner now argues that the "avoid arrest" aggravator should also be invalidated because it violated his right to be free from double jeopardy. Rejecting this claim on direct appeal, the OCCA found as follows:

> Hanson argues the State was constitutionally barred from alleging that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution at his resentencing trial. In Hanson's original trial and again at the resentencing trial, the State alleged that he killed Bowles to avoid arrest or prosecution. At Hanson's first trial, jurors did not find this aggravating circumstance. Hanson claims that this failure is equivalent to an acquittal, and that the State was barred from re-alleging this aggravating circumstance at his resentencing trial. Hanson admits that we have considered and rejected this argument in other cases. *See Harris*, 2007 OK CR 28, ¶ 13, 164 P.3d at 1110; *Hogan*, 2006 OK CR 19, ¶¶ 56-59, 139 P.3d at 928-30. We do not reconsider it here.

Id. at 1034. The Hogan case cited by the OCCA relied on Poland v. Arizona, 476 U.S. 147 (1986), for the rule that a capital sentencer's failure to find a particular aggravating circumstance does not

---

[10]     Contrary to the jury in the first trial, the resentencing jury did not find that there exists a probability that Petitioner would commit criminal acts of violence that would constitute a continuing threat to society. See O.R. Vol. IX at 1563.

constitute an acquittal of that circumstance for double jeopardy purposes. See Poland, 476 U.S. at 154-55.

The Double Jeopardy Clause of the Fifth Amendment protects defendants against: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled in part by Alabama v. Smith, 490 U.S. 794 (1989). Before the clause is implicated, however, some event, such as an acquittal, must terminate the original jeopardy. Richardson v. United States, 468 U.S. 317, 325 (1984).  In United States v. Ball, 163 U.S. 662 (1896), the Supreme Court declared the general rule, still applicable today, that the Double Jeopardy Clause does not bar retrial of a criminal defendant who successfully appeals his sentence. Ball, 163 U.S. at 672. Further, the Tenth Circuit has recognized the applicability of Poland to situations such as Petitioner's, where the conviction is affirmed but an appellate court reverses and remands for resentencing:

> In Poland v. Arizona, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), the Court rejected the argument that a sentencing body's failure to find a particular aggravating circumstance constitutes an acquittal for purposes of double jeopardy on that aggravator in the event of retrial. Id. at 155-56, 106 S.Ct. 1749. Only a finding "that *no aggravating circumstance* is present is an 'acquittal' barring a second death sentence proceeding."  Id. at 156, 106 S.Ct. 1749 (emphasis added); see Romano, 239 F.3d at 1178 (holding Poland analysis applies to Oklahoma death penalty scheme).

Cargle v. Mullin, 317 F.3d 1196, 1225 (10th Cir. 2003).

Petitioner argues that the basis for the Supreme Court's decision in Poland has been rejected by the Supreme Court. He claims the law has changed because of more recent decisions in Ring v. Arizona, 536 U.S. 584 (2002) (holding that the Arizona statute which allowed a trial judge, sitting alone, to determine the presence or absence of aggravating factors in a capital case violated the Sixth

Amendment right to a jury trial); Apprendi v. New Jersey, 530 U.S. 466 (2000) (finding it "unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed"); and Sattazahn v. Pennsylvania, 537 U.S. 101 (2003) (noting in a plurality opinion that, under Poland, sentencing proceedings were viewed differently from trials "in a respect crucial for purposes of the Double Jeopardy Clause").  Contrary to Petitioner's argument, these cases do not abrogate the ruling in Poland. As noted by the Tenth Circuit in Cargle, the Poland analysis of double jeopardy claims applies to Oklahoma death penalty cases. See Cargle, 317 F.3d at 1125.

Petitioner has not shown that the OCCA unreasonably applied the clearly established law of Poland. He is not entitled to habeas relief on this claim.

**B.      Overbreadth**

Petitioner next seeks relief on the grounds that the "avoid arrest or prosecution" aggravator is unconstitutionally overbroad. He argues that it fails to appreciably narrow the class of those eligible for death, as required by Supreme Court cases. On direct appeal, the OCCA noted that it has repeatedly rejected this claim, finding that "the application of this aggravating circumstance is sufficiently limited by the requirements that: (a) a predicate crime existed, apart from the murder, from which defendant sought to avoid arrest or prosecution; and (b) the State presented evidence that established the defendant's intent to kill to avoid arrest or prosecution." Hanson II, 206 P.3d at 1034.

Petitioner bears a heavy burden in convincing the Court that his vagueness, or overbreadth, challenge to the avoid arrest aggravator has merit. The Tenth Circuit has observed the following:

In United States v. McCullah, 76 F.3d 1087 (10th Cir.1996), *cert. denied*, 520 U.S. 1213, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997), we emphasized that "vagueness

review should be 'quite deferential' because 'mathematical precision' is not possible in the definition of aggravating factors." Id. at 1110 (quoting Tuilaepa v. California, 512 U.S. 967, 973, 114 S.Ct. 2630, 2635-36, 129 L.Ed.2d 750 (1994)). Although an aggravating factor "may be unconstitutionally vague if it 'leave[s] the sentencer without sufficient guidance for determining the presence or absence of the factor,'" id., a factor is not unconstitutional if it has some "'common-sense core of meaning . . . that criminal juries should be capable of understanding.'" Tuilaepa, 512 U.S. at 973, 114 S.Ct. at 2636 (quoting Jurek v. Texas, 428 U.S. 262, 279, 96 S.Ct. 2950, 2959-60, 49 L.Ed.2d 929 (1976) (White, J., concurring)).

Nguyen v. Reynolds, 131 F.3d 1340, 1353 (10th Cir.1997). Petitioner's arguments are unpersuasive. The OCCA's decisions establish that the "avoid arrest" aggravator requires proof that the "defendant committed some 'predicate crime,' separate from the murder." Selsor v. Workman, 644 F.3d 984, 1014 (10th Cir. 2011) (quoting Mitchell v. State, 136 P.3d 671, 677 (Okla. Crim. App. 2006)). This requirement narrows its application.

Petitioner has not cited any clearly established federal law, as determined by the Supreme Court, which supports his claim that Oklahoma's avoid arrest aggravator fails to narrow sufficiently the class of death eligible defendants. He has not demonstrated that the OCCA's finding in support of the constitutionality of the avoid arrest aggravator was an unreasonable application of clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). Thus, habeas relief is denied on this portion of his ground six claim.

### C.   Insufficient evidence

In this part of ground six, Petitioner states that the evidence supporting the "avoid arrest" aggravating circumstance was insufficient under the law. See Dkt. # 13 at 134. He raised this claim on direct appeal. The OCCA denied relief after reviewing the merits. Hanson II, 206 P.3d at 1034. Respondent asserts that Petitioner is not entitled to habeas corpus relief because he has failed to

demonstrate that the OCCA's determination was an unreasonable application of Supreme Court law, or an unreasonable determination of the facts presented at trial.

When reviewing a constitutional claim that there was insufficient evidence, the Court must rely on the rational factfinder standard, established in Jackson v. Virginia, 443 U.S. 307, 319 (1979), to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Foster v. Ward, 182 F.3d 1177, 1194 (10th Cir. 1999). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. The Tenth Circuit has emphasized that, under Jackson, review is "sharply limited" and a court "faced with a record of historical facts that supports conflicting inferences must presume - even it if does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting Wright v. West, 505 U.S. 277, 296-97 (1992)). The Jackson standard is also applied when reviewing the sufficiency of evidence for an aggravator. Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Here, the Court must consider whether the OCCA's decision that there was sufficient evidence to support the jury's finding of the "avoid arrest or prosecution" aggravator was contrary to or an unreasonable application of Jackson. 28 U.S.C. § 2254(d)(1).

In applying the Jackson standard, the Court looks to Oklahoma law. Under Oklahoma law, to support a finding of the "avoid arrest or prosecution" aggravating circumstance, "the focus is on the defendant's intent, whether proved by the defendant's own statement or through circumstantial evidence." Fox v. Ward, 200 F.3d 1286, 1301 (10th Cir. 2000). Further, Oklahoma law requires the

40

existence of a predicate crime apart from the murder from which the defendant sought to avoid arrest

or prosecution. See McGregor v. State, 885 P.2d 1366, 1385 (Okla. Crim. App. 1994).

In reviewing Petitioner's claim on direct appeal, the OCCA concluded that there was

sufficient evidence to support the "avoid arrest" aggravator. In that regard, the OCCA reasoned that:

> We review the evidence in support of this aggravator for proof of a predicate crime, separate from the murder, that prompted the defendant to kill in order to avoid arrest or prosecution for the predicate crime. The defendant's intent to kill to avoid arrest may be inferred from circumstantial evidence. Hanson and Miller kidnapped Mary Bowles, stole her car and drove her to the dirt pit. Hanson told Barnes that they were going to let her go until Thurman saw them. Miller shot Thurman and instructed Hanson to kill Mary Bowles. From the evidence, a rational jury could find that Mary Bowles was killed because she witnessed Thurman's murder and that Hanson killed her to avoid a lawful arrest. The aggravator is supported by sufficient evidence.

Hanson II, 206 P.3d at 1034 (internal citations omitted).  In Petitioner's case, ample evidence

supported a rational fact finder's conclusion that Mary Bowles was killed so she could not testify

against Petitioner and his co-defendant regarding the murder of Jerald Thurman. Neither defendant

tried to conceal his identity. After co-defendant Miller killed Thurman, he told Petitioner, "[y]ou

know what you have to do." See Tr. Trans. II Vol. VII at 1349.  The evidence supports a finding

that Mary Bowles was murdered so Petitioner and Miller could avoid prosecution for the murder of

Thurman. Petitioner has failed to demonstrate otherwise.

This Court finds that the OCCA's determination that there was sufficient evidence to support

the "avoid arrest" aggravator was not an unreasonable application of Jackson. Petitioner is not

entitled to habeas corpus relief on this part of his ground six claim.

## VI.    Predicate crime for avoid arrest aggravating circumstance (ground 7)

Petitioner next contends that his constitutional rights were violated because the State failed

to allege with specificity the predicate crime for which Mary Bowles' murder was committed in

41

order to avoid arrest or prosecution.[11] Petitioner raised this claim in his first application for post-conviction relief following his resentencing trial as part of an ineffective assistance of counsel claim. The OCCA found that neither trial nor appellate counsel provided ineffective assistance for failing to challenge the aggravator on this basis, supporting its decision as follows:

> Prior to Hanson's original trial, the State filed a Notice of Evidence in Support of Aggravating Circumstances, detailing the evidence it believed supported the alleged aggravating circumstances. (O.R. 340). That notice included evidence supporting the aggravating circumstance that Bowles and Thurman were murdered so that Hanson and Miller could avoid a lawful arrest and prosecution. At Hanson's resentencing trial, the State argued that Hanson murdered Bowles to avoid a lawful arrest or prosecution for his involvement in the murder of the dirt pit owner only. Therefore, contrary to Hanson's claim, the State did not rely on more than one predicate crime to support this aggravating circumstance.

(Opinion Denying Application for Post-Conviction Relief, filed June 2, 2009, in OCCA Case No. PCD-2006-614, at 9). Petitioner claims that the OCCA's decision is an unreasonable determination of the facts because the State produced multiple theories of the predicate felony in support of the aggravator, and there is no way to know if the jury unanimously agreed on one of those predicate crimes. However, the OCCA's determination that the State did not rely on more than one predicate crimes to support the "avoid arrest" aggravator is a finding of fact. The "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has failed to satisfy his burden.

---

[11] Petitioner also maintains that his appellate counsel was ineffective for failing to raise this claim on direct appeal. That portion of his ground seven argument will be resolved in the section addressing the rest of Petitioner's ineffective assistance of counsel claims.

Further, as Respondent correctly notes, there is no clearly established federal law requiring identification or unanimity on the underlying predicate crime to support the "avoid arrest" aggravator. In the absence of "clearly established federal law, as determined by the Supreme Court," Petitioner cannot satisfy § 2254(d). <u>Musladin</u>, 549 U.S. at 74. Because he has not rebutted the OCCA's finding of fact with clear and convincing evidence, and has not cited to any applicable Supreme Court law in support of his claim, Petitioner is not entitled to habeas relief on this claim.

## VII.   Instruction on mitigating circumstances (ground 8)

In his eighth ground for relief, Petitioner asserts that his constitutional rights were violated because the instruction defining mitigating circumstances limited the jury's consideration of mitigating evidence. Further, he contends that the prosecutor exploited the instruction to prevent the jury from giving consideration to the mitigating evidence. The challenged part of the instruction given to Petitioner's jury reads as follows:

> Mitigating circumstances are those which, in fairness, sympathy, and mercy, may extenuate or reduce the degree of moral culpability or blame. The determination of what circumstances are mitigating is for you to resolve under the facts and circumstances of this case.

O.R. Vol. IX at 1585, Instruction No. 22.[12] The OCCA declined to grant relief to Petitioner on this claim, finding as follows:

> Hanson claims that the trial court's instruction defining mitigating circumstances, when considered with the prosecutors' closing arguments, improperly limited the

---

[12]   Petitioner does not mention the second paragraph of the instruction, which reads as follows: "While all twelve jurors must unanimously agree that the State has established beyond a reasonable doubt the existence of at least one aggravating circumstance prior to consideration of the death penalty, unanimous agreement of jurors concerning the mitigating circumstances is not required. In addition, mitigating circumstances do not have to be proved beyond a reasonable doubt in order for you to consider them." O.R. Vol. IX at 1585, Instruction No.22.

> jury's consideration of evidence presented in mitigation of the death sentence. The trial court gave the standard instructions on the definition and use of mitigating evidence. *See* OUJI–CR (2nd) Nos. 4–78 and 4–79.
>
> In *Harris v. State*, 2007 OK CR 28, ¶ 25, 164 P.3d 1103, 1114, and again in *Malone v. State*, 2007 OK CR 34, ¶ 87 & n.167, 168 P.3d 185, 219 & n.167, this Court found that the instruction defining mitigating evidence used in Hanson's case did not prohibit jurors from considering mitigating evidence. The *Harris* court did find that it was error for the prosecutor to argue that jurors should not consider second stage evidence as mitigating, since it did not extenuate or reduce the defendant's guilt or moral culpability. *Harris*, 2007 OK CR 28, ¶ 25, 164 P.3d at 1114. A review of the prosecutor's closing argument concerning the mitigating evidence instruction and the mitigating evidence itself leads to our conclusion that the prosecutor did not unfairly limit the jurors' consideration of the evidence offered in mitigation in this case. *See Harris*, 2007 OK CR 28, ¶ 25, 164 P.3d at 1114. This proposition is denied.

Hanson II, 206 P.3d at 1035. The OCCA also acknowledged in the following footnote that, due to

a misuse of the instruction by prosecutors, the language in the instruction has been amended since

Petitioner's resentencing trial:

> The *Harris* court noted a misuse of the instruction's language by prosecutors and referred the matter to the Oklahoma Uniform Jury Instruction Committee (Criminal) for an amendment to remedy the problem. *Harris*, 2007 OK CR 28, ¶¶ 26–27, 164 P.3d at 1114. The Court emphasized that the language of the uniform instruction itself was not legally inaccurate, inadequate, or unconstitutional. The uniform instruction defining mitigating evidence has been amended since Hanson's resentencing trial.

Id. at n.15.

"The Eighth Amendment requires that the jury be able to consider and give effect to all

relevant mitigating evidence offered by petitioner." Boyde v. California, 494 U.S. 370, 377-78

(1990). The standard for determining whether the jury instructions, which must be viewed in total,

Cupp v. Naughten, 414 U.S. 141, 146-47 (1973), satisfy these principles is "whether there is a

reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the

consideration of constitutionally relevant evidence." Boyde, 494 U.S. at 380; see also Buchanan v.

44

Angelone,  522 U.S. 269, 276 (1998). A state, however, need not structure in a particular way the manner in which juries consider mitigating evidence. Buchanan, 522 U.S. at 276.

This Court rejects Petitioner's argument.  First, Petitioner's contention that there exists a reasonable likelihood that jurors understood the challenged language in the instruction to limit the jury's consideration of much of Petitioner's mitigating evidence is simply speculation. Next, to the extent Petitioner claims that the instruction "unconstitutionally *limits* mitigation to material that extenuates moral culpability or blame" (Dkt. # 13 at 144), Instruction Number 22 also tells the jury that what is to be considered mitigating is for them to decide. See O.R. Vol. IX at 1585. This statement broadens any limitations placed on the mitigating evidence through the first sentence. The jury was further instructed in Instruction Number 23 that evidence had been introduced of eleven enumerated mitigating circumstances and that "[i]n addition, you may decide that other mitigating circumstances exist, and if so, you should consider those circumstances as well." Id. at 1586. Finally, the jury was instructed in Instruction Number 24 that they could not impose the death penalty unless they unanimously found that the aggravating circumstances outweighed the mitigating circumstances. Id. at 1587.

Here, Petitioner has failed to specifically set forth any relevant mitigating evidence which the jury was precluded from considering. Having reviewed the challenged instruction (No. 22) in its entirety and in context of the other instructions provided to the jury, this Court finds there is not a reasonable likelihood that the jury applied Instruction No. 22 in a way that prevented them from considering any relevant mitigating evidence. See Boyde, 494 U.S. at 380. Having failed to demonstrate that the OCCA's finding was an unreasonable application of Supreme Court law, Petitioner is not entitled to relief on this issue.

**VIII.   Ineffective assistance of counsel (ground 3 and part of ground 7)**

In ground three, Petitioner raises several claims relating to his trial counsel's effectiveness, including: (1) counsel failed to call Ahmad Henry as a witness; (2) counsel failed to raise available objections to Rashad Barnes' testimony; (3) counsel failed to object to prosecutorial misconduct; and (4) counsel failed to call available mitigating witnesses. He also claims that his appellate counsel was ineffective for failing to raise an issue that trial counsel failed to bring forward mitigation evidence of Petitioner's mental illness and brain damage. In ground seven, Petitioner argues that his appellate counsel was ineffective for failing to raise an issue that trial counsel did not challenge the State's failure to specify the predicate crime supporting the avoid arrest aggravator. Petitioner raised the ineffective assistance of trial counsel claims on direct appeal, and the ineffective assistance of appellate counsel claims in post-conviction proceedings. As discussed in more detail below, the OCCA denied relief on all ineffective assistance of counsel claims.

**A.    Ineffective assistance of trial counsel**

To be entitled to habeas corpus relief on a claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland v. Washington,  466 U.S. 668 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a]

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). A federal habeas court may intercede only if the petitioner can overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011). If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs.

### 1. Failure to call witness

As his first complaint about trial counsel, Petitioner argues that his attorney should have called Ahmad Henry as a defense witness to testify about a conversation Henry had with co-defendant Miller. In rejecting all of Petitioner's ineffective assistance of counsel claims raised on direct appeal, the OCCA stated that it reviewed those claims "to determine whether counsel's constitutionally deficient performance, if any, prejudiced the defense so as to deprive the defendant of a fair trial with reliable results." Hanson II, 206 P.3d at 1031 (citing Strickland v. Washington,

466 U.S. 668 (1984)). Petitioner's claim regarding counsel's failure to call Ahmad Henry as a

defense witness was rejected by the OCCA for the following specific reasons:

> Hanson also argues that trial counsel was ineffective for not calling Ahmad Henry to testify about Miller's statement that he shot the woman. He argues that Henry should have been called to repeat Miller's confession and to rebut Detective Nance's opinion that Henry was a liar. Prior to Detective Nance's testimony, the State sought to prevent defense counsel from questioning Nance about Henry's conversation with Miller because it was hearsay within hearsay. Defense counsel argued that he should be allowed to question Detective Nance about Henry's conversation with Miller rather than calling Henry himself, stating in support that he did not know whether Henry would invoke his Fifth Amendment privilege if called to testify and argued that the testimony was admissible through Nance under 12 O.S. 2001, § 2805, providing for the admission of hearsay within hearsay under certain circumstances. Defense counsel felt calling Henry was risky; he stated, "there's no telling what he'll do. He's a long-time crook and known for getting funny notions." Introducing Henry's statement through Detective Nance allowed the defense to introduce evidence of Miller's statement to Henry without Henry being subject to cross-examination. Arguably this was the best of all possibilities for Hanson since Henry had credibility problems and was known for being unreliable. Defense counsel made a sound strategy decision not to call Henry and we will not second guess it. *See Harris*, 2007 OK CR 28, ¶ 39, 164 P.3d at 1118.

Hanson II, 206 P.3d at 1031-32. Respondent contends that Petitioner has failed to demonstrate that

the OCCA's rejection of this claim was unreasonable. See Dkt. # 27 at 52-53.

At Petitioner's resentencing, Detective Michael Nance of the Tulsa Police Department,

testified regarding evidence discovered during the investigation of the murders of Thurman and

Bowles. See Tr. Trans. II Vol. VII at 1476-86. On cross-examination, he testified as follows in

answer to defense counsel's questions:

> Q:    Officer Nance, on August the 26th of 2003, did you have a conversation with Ahmad Henry in the Tulsa detective office in your police headquarters here in town?
>
> A:    Yes.
>
> Q:    And was that conversation recorded?
>
> A:    Yes.

48

Q:      And you and Mr. Henry were talking about this case and you were an investigator in this case, right?

A:       Yes.

Q:      One of the lead investigators?

A:      Yes.

Q:      All right. And Ahmad Henry talked with you and told you about a conversation he had with Victor Miller?

A:      Yes.

Q:      And that conversation he had with Victor Miller took place in 2001?

A:      Yes.

Q:      When they were in segregation together at David L. Moss Correctional Facility?

A:      Yes.

Q:      You checked that because you're a good police officer and know that's true, right?

A:      Yes.

Q:      Okay. And Mr. Henry related to you a conversation he had with Victor Miller?

`       A:      Yes.

Q:      And in that conversation that he related to you, the conversation - - the - - I'm sorry. The factual background that Mr. Henry talked to you about with his conversation with Victor Miller, there was a good factual background to that, wasn't there?

A:      How do you mean good factual background?

Q:      Factual background. Factual background, like the fact that Miller and a friend, who he didn't identify except the fact that they were captured together at the Econo Lodge in Muskogee, were out doing some robberies?

A:      Yes.

Q:      And they were out doing some robberies and then Mr. Miller told Mr. Henry that he killed a bitch; isn't that right?

A:      Yes.

Q:      And you said, "How did he kill her?" And Mr. Henry told you that Mr. Miller said, "I shot her." Isn't that right?

A:      I don't think so. I don't recall that.

Q:      Here's your statement?

A:      Okay. Okay.

Q:      Is that right?

A:      Yes.

Q:      Okay. Thank you. Now then, tell us what you did to further investigate what you learned after August 26th of 2003?

A:      I learned that Ahmad Henry is a liar.

Tr. Trans. II Vol. VII at 1491-93. On re-direct examination, the prosecutor followed up with additional questions regarding Ahmad Henry.

Q:      Ahmad Henry was somebody you were familiar with?

A:      Yes.

Q:      And would you tell the jury how it was that the police department became familiar with Ahmad Henry?

A:      While he was in custody at David L. Moss he contacted the police department with information about numerous murders.

Q:      So Ahmad Henry is somebody that called out and wanted to talk to the police about a bunch of murders?

A:      Yes.

Id. at 1494. In light of the characterization of Ahmad Henry presented by Detective Nance, the Court agrees with the OCCA's observation that it was sound strategy not to call Henry and expose him to cross-examination.  By using Detective Nance's testimony, defense counsel was successful in

getting Henry's story about his conversation with Victor Miller before the jury without the risk of cross-examination. Defense counsel's performance was not constitutionally deficient. Petitioner has failed to convince the Court that the OCCA's ruling on this issue was an unreasonable application of Strickland. Accordingly, he is not entitled to relief on this first part of his ineffective assistance of trial counsel claim.

### 2.    Failure to raise available objections to testimony of Rashad Barnes

Petitioner next complains that his trial counsel failed to preserve Confrontation Clause violations relating to Rashad Barnes' testimony presented by the reading of his testimony from the first trial transcript.[13] More specifically, trial counsel failed to inform the court that co-defendant Miller's testimony at his own trial provided an additional basis to challenge the reliability of Barnes' prior testimony. The OCCA declined relief, finding that the requirements for admission of testimonial hearsay set forth in Crawford were satisfied, and the trial court did not err in admitting Barnes' prior recorded testimony through a transcript. See Hanson II, 206 P.3d at 1032. Accordingly, defense counsel's decision against presenting evidence of Miller's trial testimony appears reasonable. Id.

"When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (citing Strickland, 466 U.S. at 690). Further, the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Id. (citing Bell v. Cone, 535 U.S. 685, 702 (2002); Kimmelman v. Morrison, 477 U.S. 365, 382 (1982); Strickland, 466 U.S. at 689; United States v. Cronic, 466 U.S. 648, 656 (1984)). Defense counsel argued

---

[13]    The underlying Confrontation Clause discussion is in section I, supra.

strenuously that newly discovered evidence prevented admission of Barnes' testimony, but he did not specifically mention Miller's trial testimony. See M. Trans. 1/4/2006 at 18-22; Tr. Trans. II Vol. VII at 1344. As discussed in section I, supra, at his trial Miller inculpated Hanson and Barnes as the perpetrators. Reiterating what the OCCA found:

> Hanson never alleged at trial that his prior opportunity to cross-examine Barnes at the first trial was inadequate because of Miller's subsequent trial testimony implicating Barnes. In fact, defense counsel told the trial court specifically that the defense had not developed any other impeachment evidence except Miller's alleged confession to another inmate. Because Hanson failed to object to the admission of Barnes's testimony on this basis, we review only for plain error and find none. *See Malone v. State*, 2007 OK CR 34, ¶ 84, 168 P.3d 185, 218.
>
> There were sound reasons to shield Hanson's jury from evidence of Miller's testimony, including: 1) that Miller's trial testimony inculpated Hanson; 2) that Miller's trial testimony was inconsistent with his later admission regarding the murder of Bowles; and 3) that Miller's testimony exculpating himself and implicating Barnes was refuted by objective facts.

Hanson II, 206 P.3d at 1026-27 (footnotes omitted). For the same reasons, this Court concludes that trial counsel did not perform deficiently by failing to argue against admission of Barnes' testimony by transcript due to co-defendant Miller's testimony at his own trial. The OCCA's decision was not an unreasonable application of Strickland, nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Habeas relief is denied on this portion of ground three.

### 3.      Failure to object to prosecutorial misconduct

Next, Petitioner contends that his trial counsel provided constitutionally inadequate representation because he failed to lodge objections to numerous instances of prosecutorial misconduct. The OCCA denied relief, finding that it had previously decided that Petitioner was not prejudiced by any of the alleged instances of misconduct; therefore, he "cannot show that the outcome of his resentencing trial would have been different had counsel objected." Hanson II, 206

P.3d at 1032.  Petitioner argues that the OCCA used an incorrect standard because his burden under Strickland is to show that a reasonable probability exists that the outcome of the proceeding would have been different. See Dkt. # 13 at 46. Petitioner ignores the OCCA's language in an earlier introductory paragraph to the ineffective assistance of counsel section, which correctly states that Petitioner's burden is to show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. Hanson II, 206 P. 3d at 1031.

Like the OCCA, this Court has analyzed and denied relief on all of Petitioner's prosecutorial misconduct claims. See discussion in Section III (ground 4) above. Counsel does not perform deficiently in failing to lodge an objection that lacks merit or in failing to raise spurious issues. See Sperry v. McKune, 445 F.3d 1268, 1275 (10th Cir. 2006) (explaining trial counsel's failure to raise a meritless issue is not ineffective assistance).  Petitioner has not demonstrated that the OCCA's adjudication of this claim of ineffective assistance of counsel was an unreasonable application of Strickland. He is not entitled to habeas corpus relief on this claim. 28 U.S.C. § 2254(d).

### 4.    Omitted mitigating evidence

As his last complaint about trial counsel, Petitioner asserts that his attorney failed to investigate and present available mitigating witnesses at his resentencing trial. Denying relief on this claim, the OCCA found as follows:

> Finally, Hanson complains that trial counsel failed to adequately investigate and present available mitigating evidence. With this claim, Hanson has filed an application for an evidentiary hearing under Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2008). He attaches thirteen affidavits in support from family members and friends attesting he or she would have been willing to testify that Hanson was a good son, father, brother and friend, that he was a caring and kind person, that he was a loyal and benevolent friend, that he was supportive and took an interest not only in the life of his own son but in the lives of

the children of his family and friends, that he was respectful and that each affiant felt deep affection for him. During the sentencing portion of his trial, Hanson presented evidence that he was a kind person, a good friend, and a devoted father who was, in turn, deeply valued by those who knew him well. Dr. Russell presented Hanson's family and social history. The jury also heard from Hanson's long time girlfriend and mother of his son, the eleven year old son, and his girlfriend's brother and niece with whom Hanson had been close. In discussing his family history, Dr. Russell noted that Hanson's mother was so distraught over the case that she declined after two meetings to be further involved in her son's assessment. That testimony contradicts the mother's claim in her affidavit that she knew nothing of her son's resentencing trial. We cannot find a strong possibility that trial counsel was ineffective for failing to use these witnesses. Nor are we persuaded that presenting additional character evidence of the same type would have changed the outcome of the trial. Hanson's application for an evidentiary hearing is denied and his claim of ineffective assistance of counsel is rejected.

Hanson II, 206 P.3d at 1032 (footnote omitted). Respondent contends that Petitioner is not entitled to habeas relief because the OCCA's finding was not an unreasonable application of Strickland, nor was it an unreasonable determination of facts.

This Court now turns to the application of the Strickland standard to the facts of Petitioner's case. During Petitioner's resentencing trial, four witnesses presented mitigating evidence. Anita Jeanne Russell, Ph. D., testified about Petitioner's social and family history. Tr. Trans. II Vol. X at 1742-48. Dr. Russell also testified about her risk assessment of Petitioner, supporting trial counsel's argument that the continuing threat aggravator was not appropriate. Petitioner's girlfriend's niece, Tenika Simmons, testified that Petitioner helped her through some troubled times and talked her out of committing suicide. Id. at 1779-80. She described Petitioner as a good father to his son. Id. at 1782. Further, she had never seen him be violent or aggressive. He was kind, and always wanted to please everyone and make them happy. Id. at 1783. Eric Knowles, brother of Petitioner's girlfriend, testified that Petitioner was a hard worker, and he loved his son very much. Id. at 1789-90.  Knowles stated that Petitioner had shared some personal history with him, and Knowles was aware that the

death of Petitioner's father was very hard on him. He said that Petitioner was more a follower than a leader, and needed structure in his life. Id. at 1791-92. Ledocia Warrior, Petitioner's former girlfriend and mother of his son, testified that she had a relationship with Petitioner for four years. She testified that when she knew Petitioner he was a very caring and loving person, and never showed any signs of anger. Id. at 1803. She stated that Petitioner's son was the most important thing to him in his life. Id. at 1804.

This is not a case where trial counsel did not investigate or present appropriate mitigating evidence. Rather, Petitioner claims that his attorney did not present enough evidence to "humanize" him and demonstrate to the jury that he was an individual separate and apart from his crimes. See Dkt. # 13 at 67. He contends that there was a wealth of mitigating witnesses who could have testified on his behalf. Accordingly, the Court has examined the mitigating evidence Petitioner claims should have been presented. Petitioner argues that, had his attorney conducted an adequate investigation for second stage evidence, he would have discovered multiple relatives and acquaintances who would have humanized Petitioner in the eyes of the jury. Id. Based on affidavits provided by Petitioner to show the nature and extent of available mitigation evidence, Petitioner contends that, if presented during second stage, testimony from the following witnesses would have altered the jury's decision to impose the death penalty.

> Charlotte Ward - Petitioner's mother, Charlotte Ward, stated in her affidavit that she would have been glad to testify for her son, if asked, because she loved him very much. She said he was a "sweet kid," and an excellent father to his son. She said she did not want him to get the death penalty. See Application for Evidentiary Hearing in OCCA Case No. D-2006-126, Ex. A.

> Stephen Hanson - Petitioner's older brother, Stephen Hanson, stated that Petitioner became a recluse and "unto himself" after their father died at a young age. He said Petitioner was a good person, and tried hard to be good at sports like Stephen. Petitioner liked music. If asked, Stephen would have testified for his brother. Id. at Ex. B.

<u>Charmyn Clariett</u> - Petitioner's younger sister, Charmyn Clariett, stated that she would have testified that she loved Petitioner and he is not a monster. When she was 9 or 10, he would babysit her, comb her hair and look after her. She said she would have testified at the resentencing trial, but was not contacted by Petitioner's attorney. <u>Id.</u> at Ex. C.

<u>Marsha Hollingsworth</u> - Marsha Hollingsworth is Petitioner's older cousin, but "like a brother" to her. She started taking care of Petitioner when he was still in diapers. She stated that Petitioner was brought up in church, and was a very kind, shy person. She was not contacted by the trial attorney, and was upset that no one from Petitioner's side of the family testified. <u>Id.</u> at Ex. D.

<u>Joyce Leake</u> - Ms. Leake is the grandmother of Petitioner's son. She stated in her affidavit that Petitioner was well-mannered and "took awfully good care" of her grandson. She said he was a nice young man whom everyone liked. If asked, she would have testified at the resentencing trial. <u>Id.</u> at Ex. E

<u>Spencer Knowles</u> - Spencer Knowles is the uncle of Petitioner's son. He stated that Petitioner was a good father to his son, and cared about his family. He claimed that Petitioner was a "good-souled person" who would help anyone who needed help. If asked, he would have testified for Petitioner. <u>Id.</u> at Ex. F.

<u>Theresa Simmons</u> - Identifying herself as Petitioner's "ex-sister-in-law," Theresa Simmons stated in her affidavit that Petitioner was kind and caring, and helped her daughter with her homework. She was at Petitioner's resentencing trial and expected to testify on his behalf. She did not know why the attorney did not ask her to testify. <u>Id.</u> at Ex. G.

<u>Melissa Simmons</u> - Melissa Simmons is the niece of Ledocia Warrior. She would have liked to testify and tell the jury how important Petitioner was in her life. She stated in her affidavit that he was always cooking and cleaning at their house, that he looked after his son, bathing him and feeding him, and that he was always nice to her. <u>Id.</u> at Ex. H.

<u>Marilyn Wright</u> - Petitioner's mother's best friend, Marilyn Wright, stated in her affidavit that Petitioner is like a son to her. She claims that Petitioner was always respectful, and was good about cleaning up around the house and washing dishes. She would have been happy to testify for Petitioner, if asked, because she loved him. <u>Id.</u> at Ex. I.

<u>Tremaine Wright</u> - Tremaine Wright considers Petitioner to be his cousin because they lived together for eight years. He stated in his affidavit that Petitioner is a mellow person who talked about missing his Dad a lot. He was a good father. When Tremaine got married, Petitioner started hanging out with Victor Miller. Tremaine would have testified for Petitioner if the attorney had asked. <u>Id.</u> at Ex. J.

<u>Jermaine Wright</u> - Jermaine Wright described himself in his affidavit as a childhood friend of Petitioner. He stated that Petitioner was a "very respectable guy." He emphasized what

56

a good, responsible father Petitioner was to his son. He stated that he loved Petitioner like a brother and would have been more than happy to testify on his behalf, but was not contacted by the attorney. Id. at Ex. K.

Jamarro Wright - Jamarro Wright was a family friend who described Petitioner as "kind of quiet and laid back." He stated that Petitioner was good with all the kids, loved family activities, and was "doing real good" until he started hanging out with Victor Miller. He was not contacted by Petitioner's attorney to testify. Id. at Ex. L.

Daron Joseph - As a friend, Daron Joseph, described Petitioner in his affidavit as a "straight up person" who loves his family and would bend over backward for them. When he saw Petitioner's case on the television, he said it "just doesn't fit" Petitioner's character. According to Daron, Petitioner was honest and respected others. The attorney never contacted him about testifying for Petitioner. Id. at Ex. M.

As noted by the OCCA, the affiants all stated that they would have testified for Petitioner if asked by trial counsel to do so, and would have told the jury that he was a caring and kind person, a loyal and benevolent friend, a devoted father, and respectful of others. Similar descriptions of Petitioner were presented to the jury through the testimony of Dr. Russell, and the other three mitigation witnesses. After examining the mitigating evidence that was actually presented by Petitioner's trial counsel, it is apparent that trial counsel was aware of the significant mitigating events that occurred during Petitioner's life. The attorney presented much of this information to the jury through the testimony of the four mitigation witnesses. The Court is, therefore, unable to conclude that the failure to present the additional mitigation evidence of the thirteen potential witnesses was an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The additional mitigating evidence is somewhat duplicative, and of marginal value. Trial counsel's representation was not constitutionally deficient under the Strickland standards. Because the OCCA's resolution of this claim was not an unreasonable application of Strickland, Petitioner is not entitled to habeas relief on his claim that trial counsel was ineffective for failing to investigate and present available mitigating evidence.

57

**B.      Ineffective assistance of appellate counsel**

In ground seven, Petitioner complained that his appellate counsel was constitutionally

ineffective for failing to raise an issue on direct appeal concerning the lack of specificity of the

predicate crime for the avoid arrest aggravator. The <u>Strickland</u> test also applies when assessing the

effectiveness of appellate counsel. <u>United States v. Cook</u>, 45 F.3d 388, 392 (10th Cir. 1995),

<u>abrogated on other grounds by</u> <u>Neill v. Gibson</u>, 278 F.3d 1044 (10th Cir. 2001).  When a habeas

petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue

on direct appeal, the Court first examines the merits of the omitted issue. <u>Hawkins v. Hannigan</u>, 185

F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue is meritless, then counsel's failure to raise it

does not amount to constitutionally ineffective assistance.  <u>Cargle v. Mullin</u>, 317 F.3d 1196, 1201

(10th Cir. 2003). The Court determined in its discussion of ground seven, <u>supra</u>, that the claim

relating to the predicate crime for the "avoid arrest" aggravator lacks merit. Thus, Petitioner's

appellate counsel was not ineffective for failing to raise this issue on appeal.

**C.      Ineffective assistance of trial and appellate counsel as to mental health issues**

In ground three, Petitioner argues that his trial, appellate, and post-conviction counsel[14] were

ineffective for failing to discover and present evidence of his mental illness and cognitive

dysfunction as mitigating evidence at his resentencing trial. This was the only proposition raised in

Petitioner's successive application for post-conviction relief filed as OCCA Case No. PCD-2011-58.

Petitioner contends that, if his jury had been given the opportunity to consider his mental illnesses

and cognitive impairment, there is a reasonable probability that he would not have been sentenced

---

[14]      It is unnecessary to address Petitioner's ineffective assistance of post-conviction counsel
claim because the ineffectiveness of post-conviction counsel cannot serve as grounds for
relief in a proceeding arising under 28 U.S.C.§ 2254. <u>See</u> 28 U.S.C. § 2254(i).

to death. Respondent asserts that this claim is procedurally barred.  The Court disagrees. Because the OCCA clearly reviewed the merits of Petitioner's claim, the AEDPA deferential standard of review must be applied. See 28 U.S.C. § 2254(d).

In denying relief on Petitioner's second post-conviction application, the OCCA did not find that Petitioner's attorneys provided constitutionally deficient performance, or that Petitioner was prejudiced by their performance. The OCCA acknowledged that the evidence Petitioner provided to support his claim of mental illness and cognitive dysfunction derives from the following:

> Hanson provides in support of his current application for relief the January 13, 2011 affidavit of Tora Brawley, Ph.D., and Hanson's November 29, 2010 psychiatric evaluation conducted by Dr. Donna Schwartz-Watts, M.D.  Dr. Brawley conducted a neuropsychological evaluation of Hanson in December 2010 that included a clinical interview, behavioral observation and administration of a battery of standardized tests. Dr. Brawley states that her evaluation revealed the presence of scattered cognitive deficits suggestive of brain organicity. She believes these deficits were present at the time of the murder because there is no evidence Hanson suffered any trauma since that time to account for these deficits. She states that scores on testing conducted in 2004 should have led to further evaluation of Hanson's neuropsychological and neurological functioning. Findings of brain organicity, according to Dr. Brawley, can be an important aspect contributing to criminal behaviors and should have been considered in Hanson's defense during legal proceedings. Dr. Schwartz-Watts concludes that Hanson suffers form Dysthymic Disorder, Major Depressive Disorder, Post Traumatic Stress Disorder, Cognitive Disorder and Paranoid Personality Disorder. Her opinions are consistent with those of Dr. Brawley.

See Order Denying Second Application for Post-Conviction Relief and Motion for Evidentiary Hearing, filed March 22, 2011, in OCCA Case No. PCD-2011-58, at n.5. In support of its decision to deny relief, the OCCA stated:

> According to the materials, Hanson was evaluated early on by the Head of Psychological Services at OIDS at the request of trial counsel, presumably to evaluate the need for psychological experts. After the screening procedure, a psychologist was retained to perform a risk assessment for Hanson's original trial. Appellate counsel's request for a neuropsychologist during Hanson's direct appeal of his original trial was denied based upon the screening examination conducted before trial. We can only

59

conclude that this screening examination did not suggest the need for neuropsychological testing for mental illness and cognitive dysfunction. For Hanson's resentencing trial, a second risk assessment was performed by another psychologist. There is no evidence before us that either of the psychologists who performed risk assessments of Hanson expressed any concerns to Hanson's attorneys – as one would think this type of expert would do in a case like this – that Hanson needed further evaluation because their testing revealed indicators of mental illness or cognitive dysfunction. We cannot accept as credible Hanson's assertion that the experienced capital litigation experts and attorneys all missed these obvious indicators of mental illness and cognitive dysfunction in this case at every step. Instead, we think the record shows that the issue of Hanson's mental health was considered by trial and appellate counsel and they decided not to pursue further mental health investigation in light of the screening test results. This was a reasonable strategy decision under the circumstances.

We are also not convinced that there is a reasonable probability that the outcome of this case would have been different had evidence of Hanson's mental illnesses and cognitive dysfunction been presented. There is reason to believe that experts might disagree about the presence of, or severity of, Hanson's mental illness and cognitive dysfunction. His initial screening exam apparently revealed nothing to suggest the need for expert assistance to investigate mental illness or cognitive dysfunction. Nor does it appear that the psychologists who performed the risk assessments were prompted, based on their findings, to suggest the need for further investigation of Hanson's mental health. On this record, we are not convinced that Hanson has established deficient performance and prejudice sufficient for post-conviction relief in this case, nor is he entitled to an evidentiary hearing on the issue raised.

See Order Denying Second Application for Post-Conviction Relief and Motion for Evidentiary Hearing, filed March 22, 2011, in OCCA Case No. PCD-2011-58.

In evaluating a claim of ineffective assistance of appellate counsel, this Court applies the Strickland two-pronged standard used for claims of ineffective assistance of trial counsel. Because Petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins, 185 F.3d at 1152. If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. Id.; see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing Cook, 45 F.3d at 392-93). If the issue has merit, the Court then must determine whether counsel's

failure to raise the claim on direct appeal was deficient and prejudicial. Hawkins, 185 F.3d at 1152; see also Cook, 45 F.3d at 394. More particularly, "the relevant questions are whether appellate counsel was 'objectively unreasonable' in failing to raise these . . . claims on direct appeal and, if so, whether there is a 'reasonable probability that, but for his counsel's unreasonable failure' to raise these claims, [Petitioner] 'would have prevailed on his appeal.'" Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001). In a challenge to a capital sentence based on a claim of ineffective assistance of counsel, the question is whether there is a reasonable probability that, absent the errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

In this case, the OCCA carefully reviewed the proffered information and affidavits in support of Petitioner's claim. This Court's review is governed by the AEDPA, which requires the Court to give significant deference to the state court's decision. See Lockett v. Trammell, 711 F.3d 1218, 1230 (10th Cir. 2013). The Court agrees with the OCCA that appellate counsel did not perform deficiently because pretrial mental and social evaluations of Petitioner did not reveal a need for further evaluation. See Dkt. # 13, Attachment 10. Both trial and appellate counsel requested mental health screening procedures, clearly attuned to a potential defense or mitigating factor. After the screening procedure requested by trial counsel, a psychologist was retained to perform a risk assessment. Appellate counsel consulted with Kathy LaFortune, Ph. D., the psychologist who had conducted the screening examination of Petitioner prior to trial to see if a neuropsychologist should be retained. Dr. LaFortune's opinion was that a neuropsychologist should not be retained based on her recollection of the screening. See Dkt. # 1, Attachment 10 at 2. The Court finds that the OCCA's factual finding that, "[t]here is no evidence . . . that either of the psychologists who performed risk assessments of

Hanson expressed any concerns to Hanson's attorneys . . . that Hanson needed further evaluation" is entitled to a presumption of correctness. <u>See</u> 28 U.S.C. § 2254(e)(1) (providing that "a determination of a factual issue made by a State court shall be presumed to be correct" . . . and that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

The Court also agrees with the OCCA's conclusion that Petitioner was not prejudiced by trial counsel's failure to further investigate and present evidence of Petitioner's mental health issues. The evidence showed that Petitioner carjacked, kidnapped, then shot Mary Bowles and left her body lying beside a dirt road. Petitioner has failed to convince the Court that, even if presented with evidence of Petitioner's mental illnesses and cognitive impairment, the jury would have concluded that the balance of aggravating and mitigating circumstances would not warrant death. Because the Court does not find that trial counsel's representation violated Petitioner's constitutional rights, then appellate counsel's performance was not ineffective for failing to raise the issue on direct appeal. <u>Cargle</u>, 317 F.3d at 1201. Petitioner is not entitled to habeas relief on this part of his ineffective assistance of counsel claim.

## IX.   Cumulative error (ground 9)

Petitioner claims in ground nine that the cumulative effect of errors at both phases of trial deprived him of his constitutional right to a fair trial and sentencing. He raised claims of cumulative error both on direct appeal and in his first application for post-conviction relief. The OCCA denied relief in both instances. The Tenth Circuit Court of Appeals has specifically held that cumulative error analysis is applicable "only where there are two or more actual errors." <u>Fero v. Kerby</u>, 39 F.3d 1462, 1475 (10th Cir. 1994) (citing <u>United States v. Rivera</u>, 900 F.2d 1462, 1571 (10th Cir. 1990)).

Cumulative impact of non-errors is not part of the analysis. Id. Having rejected each of Petitioner's claims of constitutional error, the Court finds he has shown no cumulative error warranting habeas relief. The OCCA's denial of Petitioner's claims based on cumulative error was not an unreasonable application of Supreme Court law. He is not entitled to relief on ground nine.

**X.      Evidentiary hearing and Request for Discovery**

In his petition (Dkt. # 13 at 154-60), Petitioner seeks an evidentiary hearing on his ineffective assistance of counsel claims. He also seeks discovery and attaches interrogatories and requests for production. As the disposition of Petitioner's habeas corpus petition does not require reference to any materials beyond those that are available and currently part of the record, the Court finds that there is no need for an evidentiary hearing or discovery in this case. There are no disputed factual questions remaining that could possibly entitle Petitioner to habeas corpus relief. He has failed to demonstrate the need for an evidentiary hearing under either 28 U.S.C. § 2254(e)(2), or any other governing principle of law. Williams v. Taylor, 529 U.S. 420 (2000). Accordingly, Petitioner's requests for an evidentiary hearing and for discovery are denied.

**CERTIFICATE OF APPEALABILITY**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  The Court recognizes that "review of a death sentence is among the most serious examinations any court of law ever undertakes."  Brecheen, 41 F.3d at 1370. To be granted a certificate of appealability, however, Petitioner must demonstrate a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists of reason or that the questions

deserve further proceedings. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003). "Obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor." <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983) (citations omitted).

The Court reviewed each of Petitioner' propositions of error, and found none of the claims merited or warranted habeas relief.  However, the Court recognizes that some of Petitioner' stated issues relate to the alleged deprivation of his constitutional rights, which, if substantiated, could entitle him to habeas relief. In order to ensure that these issues receive the type of review on appeal which should be accorded such serious matters, the Court has carefully considered each issue and finds that the following enumerated issues could be debated among jurists or could be resolved differently by another court:

> <u>Grounds Three and (part of) Seven:</u> insofar as each raises an issue of ineffective assistance of trial or appellate counsel

Additionally, this Court finds that these same issues are adequate to deserve encouragement to proceed further. <u>See</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (citing <u>Barefoot</u>, 463 U.S. at 893).

## CONCLUSION

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.  His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY IT IS HEREBY ORDERED** that:

1.     The petition for writ of habeas corpus (Dkt. # 13) is **denied**.

2.     A certificate of appealability is granted as to the claims specifically enumerated above.

3.      A separate judgment shall be entered in this matter.


        **DATED** this 1st day of July 1, 2013.

                                                CLAIRE V. EAGAN
                                                UNITED STATES DISTRICT JUDGE